

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-24-2004

# USA v. Dickerson

Precedential or Non-Precedential: Precedential

Docket No. 03-4450

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"USA v. Dickerson" (2004). *2004 Decisions*. Paper 354.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/354

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES
COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-4450

UNITED STATES OF AMERICA,
                                  Appellant

v.

ROBIN DICKERSON

Appeal from the United States
District Court
for the District of New Jersey
(D.C. Criminal No. 02-cr-00858)
District Judge:
Honorable Katharine S. Hayden

Argued July 12, 2004

Before:  RENDELL, FISHER and
VAN ANTWERPEN, Circuit Judges.

(Filed: August 24, 2004)

George S. Leone    [ARGUED]
Office of United States Attorney
970 Broad Street, Room 700
Newark, NJ  07102
  Counsel for Appellant

John H. Yauch    [ARGUED]
Office of Federal Public Defender
972 Broad Street
Newark, NJ  07102
  Counsel for Appellee

OPINION OF THE COURT

RENDELL, Circuit Judge.

On November 18, 2002, Robin Dickerson pleaded guilty to importation of more than 100 grams of heroin in violation of 21 U.S.C. §§ 952(a) and 960(b)(2), a Class B felony with a five-year mandatory minimum sentence. After acceptance of responsibility and minor role adjustments were made, Dickerson's sentencing range under the United States Sentencing Guidelines was determined to be 30 to 37 months. However, the District Court granted her motion for a downward departure based on aberrant behavior, under § 5K2.20 of the Sentencing Guidelines, and Dickerson was sentenced to five years of probation.

The Government appeals the District Court's judgment of sentence, urging that probation was an illegal sentence for Dickerson's offense, and that the downward departure was erroneously granted. It also asserts that the de novo standard of review contained in the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003, Pub. L. No. 108-21, § 401, 117 Stat. 650, 670 (2003) (codified at 18 U.S.C. § 3742(e)(3)(B)) ("PROTECT

Act"), applies, notwithstanding the fact that the instant departure was granted prior to the Act's effective date. The District Court had jurisdiction based on 18 U.S.C. § 3231, and we have jurisdiction to consider the Government's appeal of the sentencing order pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(b). For the reasons that follow, we will vacate Dickerson's sentence, remand, and instruct the District Court to impose a sentence that falls within the applicable Guideline range.

## I. Factual & Procedural Background

At the time of her offense, Robin Dickerson was twenty-four years old. She lived with her mother in Staten Island, New York, and she had recently been forced to leave college after defaulting on her student loans. Over the course of her adult life, Dickerson was consistently employed at various jobs, ranging from retail sales to electronic data entry. In late 2001 and early 2002, Dickerson was employed as a lab clerk at a hospital. Prior to February of 2002, Dickerson had never been arrested.

In the summer of 2001, Dickerson was approached on a New York City street by a man named Chino, and they exchanged telephone numbers at that time. A few weeks prior to February 21, 2002, Chino called Dickerson and asked if she would travel to the Dominican Republic and return with narcotics in exchange for an amount of money that could range from $2,500 to $3,000. Chino mentioned that other women would be doing the same

thing, but that Dickerson would not meet them. Dickerson agreed, apparently hoping to earn enough money to repay her overdue student loans.

From Chino, Dickerson received $900 in cash, which she used to purchase plane tickets for her trip. She departed for the Dominican Republic on Thursday, February 21, 2002. When she arrived there, another man named Jose met her and took her to a hotel. Three days later, on Sunday, Jose brought Dickerson approximately fifty pre-packed pellets of heroin. Dickerson was able to ingest eleven pellets and vaginally insert sixteen more. On Monday, February 25, 2002, she flew back to the United States, arriving at Newark International Airport, where uninvolved friends were scheduled to pick her up. During a routine interview with Customs officers, Dickerson grew nervous and admitted that she was transporting narcotics. After receiving medical attention at a hospital, during which the heroin was recovered and turned over to law enforcement agents, Dickerson was arrested.

After spending three days in pretrial custody, Dickerson was released on bail and placed on home confinement with electronic monitoring. Immediately following her arrest, Dickerson cooperated with law enforcement agents by describing her role in the offense and her knowledge of other individuals involved in the importation scheme. However, her limited knowledge of the operation was not sufficient to support a "substantial assistance" adjustment under § 5K1.1 of

2

the Guidelines. On November 18, 2002, Dickerson entered a plea of guilty to importation of more than 100 grams of heroin, a class B felony with a five-year mandatory minimum sentence.

On September 26, 2003, the District Court sentenced Dickerson. According to the Presentence Report ("PSR") prepared by Dickerson's probation officer, the recommended offense level was 21.[1] This level took into account downward adjustments based on the "safety valve" provision of the Guidelines in § 5C1.2, and acceptance of responsibility pursuant to § 3E1.1. The District Court granted a further downward adjustment of two levels based on a finding that Dickerson played a minor role in the offense.[2] Because this was Dickerson's first offense, she had no criminal history points, and she was therefore assigned a criminal history category of I. Thus, the District Court determined that the appropriate sentencing range under the Guidelines was 30 to 37 months.

At the sentencing hearing, the District Court entertained Dickerson's motion for a downward departure based on aberrant behavior under § 5K2.20 of the

Guidelines. Defense counsel argued that Dickerson's case was extraordinary, based on the considerations listed in the commentary following the aberrant behavior policy statement. He urged that Dickerson's poor performance on psychological tests measuring intelligence, along with her history of emotional problems including depression, placed her situation outside the heartland of drug courier cases.[3] He contended that Dickerson was particularly depressed at the time of the offense, and that the brief duration of the offense did not allow her time to reflect on her actions. He also emphasized her lack of any prior arrests or convictions, her desire to complete college, and her steady employment history. In closing, he argued that a term of imprisonment would disrupt Dickerson's ongoing rehabilitative efforts.

Dickerson and her mother each briefly addressed the District Court during the hearing, describing Dickerson's current employment and her relationship with her mother. The Government relied upon its

---

[1] The PSR also explicitly stated in paragraphs 70 and 71 that, pursuant to 18 U.S.C. § 3651(a)(1), 21 U.S.C. §§ 952(a) and 960(b)(2)(A), and U.S.S.G. § 5B1.1(b)(1), Dickerson was not eligible for a sentence of probation.

[2] The Government does not challenge the propriety of the minor role adjustment.

[3] This argument relied in part upon a psychological evaluation of Dickerson that was performed in July and August of 2003. The report estimated that Dickerson was functioning within a low-average intelligence range, and operated at an early elementary school level in several subject areas. It also indicated that she was significantly depressed, with low self-esteem and immaturity issues. The District Court did not explicitly credit or discredit any of the findings included in this report.

written sentencing memorandum, in which it argued that Dickerson's case was not extraordinary, that the requirements for an aberrant behavior departure were not met by the facts here, and that none of the sentencing objectives listed in 18 U.S.C. § 3553(a) would be furthered by a reduced sentence.

The District Court ultimately granted Dickerson's motion for a downward departure. The Court's written statement of reasons simply indicates that the departure was based on § 5K2.20 of the Guidelines, permitting departures for aberrant behavior. The reasons for the departure are explained somewhat by the District Court's oral ruling at the sentencing hearing. Preliminarily, the Court acknowledged its obligation to impose a sentence that furthers the considerations enumerated in 18 U.S.C. § 3553(a), including deterrence, rehabilitation, and the need for appropriate punishment. The Court went on to explain its major reasons for departing downward, namely, because Dickerson was exploited by those who directed the importation scheme, and because she had accomplished much in her life prior to the offense, as well as following her arrest. We include in the margin the relevant portion of the sentencing discussion, taken from the hearing transcript, as it is central to our discussion of the propriety of the departure in question.[4]

---

[4]The District Court stated:

So I have to consider important factors like making sure my sentence reflects the seriousness of what somebody did. My sentence can't simply ignore the importance of providing just punishment. And to the extent it becomes in an open courtroom, there are people involved with Ms. Dickerson who is going to know what kind of a sentence she got. The respect for the law has to be upheld in the kinds of sentence that is given.

Ms. Dickerson's conduct can't repeat itself. The public needs to be protected. She needs to be deterred from further criminal conduct. People who hear about her sentence need to know that doing what she did receives appropriate punishment.

The rehabilitation that is the feature of sentencing for Ms. Dickerson is also important. And Ms. Dickerson's life one hardly imagine she needs rehabilitation . . . because we have here a young woman whose life-style, whose accomplishment before this criminal offense, whose accomplishment since the criminal offense are all on the high road. And the criminal conduct is a marked departure . . . .

I think as [counsel] points out an important fact which struck me . . . is, that she barely was able to accomplish maybe a third of what the folks who conscripted or wanted her to import. And the mode of payment in terms of the amount agreed that might have prompted Ms. Dickerson, is the first time I have seen it by the pellet that she was going to get paid. It is such a commentary on the exploitation of people conscripted in these schemes. And the fact

4

The District Court went on to sentence Dickerson to five years of probation, a departure of eleven levels from the applicable Guideline range. According to the Court, such a sentence indicated that the crime was a serious one, but also would enable Dickerson to continue her efforts at rehabilitation. The Court specifically noted its belief that Dickerson was not likely to engage in similar criminal behavior again. At no time did the Court address, nor did the Government raise, the issue of the

that Ms. Dickerson agreed, the fact that she was treated this way was suggesting to me she was as far removed from somebody who had the requisite criminality . . . to do this again . . . .

So the way the offense was committed, the way Ms. Dickerson fell into the hands of the exploitative traffickers who used her, the way she came clean, the way she's conducted her life since, all I believe support a finding that this motion has merited her the conduct in committing the offense was aberrant as in the guidelines, and just punishment can be accomplished by putting Ms. Dickerson on a substantial period of probation that includes careful supervision . . . .

She's got a job right now, and she's a lot wiser. And I think too embarked upon a professional career where being savvy, doing the right thing and dealing with people in a healthy way will all be of assistance in her behavior, not only with the law but in terms of her supervision.

statutory prohibition of a probationary sentence.

The Government advances two separate challenges to the sentence imposed by the District Court. First, the Government contends that a term of probation is an illegal sentence for a defendant convicted of importation of heroin. Second, the Government attacks the downward departure for aberrant behavior, arguing that the departure itself was not warranted, and, in the alternative, that the extent of the departure was unreasonable. We will address both of these issues in turn.

## II. The Ban on Probation

Before reaching the challenges to the District Court's decision to depart downward from the relevant sentencing range, we will examine whether the sentence was illegal in light of prohibitions on probationary sentences contained in applicable criminal statutes. The Government argues that such a sentence, in a case involving importation of heroin in the amount charged here, violates two particular federal laws. Dickerson disagrees, urging that her satisfaction of the prerequisites for the safety valve provision of 18 U.S.C. § 3553 renders her immune to the statutory ban on sentences of probation. Further, as both parties recognize, the prosecutor failed to raise

this objection at the sentencing hearing.[5] As we will explain below, we conclude that a probationary sentence under these circumstances was plainly erroneous.

## A. Standard of Review

Where a party does not object or otherwise bring an error to the attention of the district court, we normally review for plain error. See United States v. Olano, 507 U.S. 725, 732 (1993); Fed. R. Crim. P. 52(b). In order to correct a sentencing error not raised before the district court, that standard requires us to find that there was: 1) an error; 2) that is plain, or obvious; and 3) that affects substantial rights. Olano, 507 U.S. at 732; United States v. Plotts, 359 F.3d 247, 249 (3d Cir. 2004). If those three requirements are met, it is within our discretion to correct the error if it was one that "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." Johnson v. United States, 520 U.S. 461, 467 (1997) (internal quotation marks omitted).

In the criminal context, we are most often called upon to apply this standard when a plain error is brought to our attention on appeal by a defendant who challenges aspects of his conviction or his sentence. See, e.g., United States v. Dominguez Benitez, 124 S. Ct. 2333 (2004); United States v. Moore, 375 F.3d 259 (3d Cir. 2004). Here, the Government seeks to invoke the plain error doctrine, and Dickerson urges that it should not be permitted to do so. Essentially, Dickerson contends that the third prong of the plain error analysis, which requires us to find that "substantial rights" have been affected by the error, cannot have been met where the Government challenges a sentence that is too low. Such a position has apparently been adopted by two other courts of appeals, which have held that allowing illegal sentences to stand would not result in manifest injustice where the sentence is less severe than it should have been. See United States v. Posters 'N' Things, Ltd., 969 F.2d 652, 663 (8th Cir. 1992) (refusing to find plain error where the sentence imposed violated the statutory minimum); United States v. Garcia-Pillado, 898 F.2d 36, 39 (5th Cir. 1990) (same).[6]

As the parties recognize, however, six other courts of appeals have firmly rejected Dickerson's argument and applied

---

[5]We note that the prosecutor also could have raised this issue with the District Court through a motion pursuant to Federal Rule of Criminal Procedure 35(a), which allows the Government to seek correction of a clearly erroneous sentence within seven days of sentencing. However, the prosecutor failed to file such a motion.

[6]Although neither of these decisions has been explicitly overruled, we question the continuing force of their reasoning in light of the Supreme Court's subsequent rejection of the "manifest injustice" test for plain error, upon which both decisions seem to rest. See Olano, 507 U.S. at 735.

the plain error standard in the context of criminal appeals brought by the Government. See United States v. Gordon, 291 F.3d 181 (2d Cir. 2002); United States v. Perkins, 108 F.3d 512 (4th Cir. 1997); United States v. Barajas-Nunez, 91 F.3d 826 (6th Cir. 1996); United States v. Zeigler, 19 F.3d 486 (10th Cir. 1994); United States v. Edelin, 996 F.2d 1238 (D.C. Cir. 1993); United States v. Rodriguez, 938 F.2d 319 (1st Cir. 1991). According to this majority view, the Government is equally entitled to seek plain error review because the language of Rule 52(b) does not limit which party may raise a plain error before an appellate court. Further, the Government's right to seek justice on behalf of the accuser, and society, in a criminal case can certainly be "substantially affected" where a plainly erroneous sentence that is inappropriately light is imposed. See Gordon, 291 F.3d at 193; Perkins, 108 F.3d at 517.

We are persuaded that the majority position is the sounder one, and we conclude that the language of the Rule, as well as the aforesaid policy underlying it, supports allowing the Government to raise a sentencing error on appeal, even where that error was not brought to the attention of the District Court. Thus, we will review the District Court's imposition of a probationary sentence for plain error, applying the typical plain error analysis set forth in Olano.

B. Discussion

As we have indicated, Dickerson was convicted under 21 U.S.C. §§ 952(a) and 960(b)(2) for importing over 100 grams of heroin, a crime that is categorized as a class B felony pursuant to 18 U.S.C. § 3559(a)(2). According to one statutory provision, a defendant who is found guilty of a class B felony may not be sentenced to a term of probation. 18 U.S.C. § 3651(a)(1). And, according to another statutory provision, a defendant who is found guilty under 21 U.S.C. § 952 of importing "100 grams or more of a mixture or substance containing . . . heroin" cannot be placed on probation. 21 U.S.C. § 960(b)(2). The Government relies on these two statutory prohibitions on probationary sentences, both of which facially apply to Dickerson's offense, to argue that the District Court committed plain error in failing to impose a sentence of imprisonment.

Dickerson's response to this argument is that her eligibility for the statutory "safety valve" provision in 18 U.S.C. § 3553(f), which exempts a subset of defendants from applicable statutory mandatory minimum sentences under certain circumstances,[7] renders the

_____

[7]18 U.S.C. § 3553(f), which sets forth a "limitation on applicability of statutory minimums in certain cases," states the following:

Notwithstanding any other provision of law, in the case of an offense under [certain sections of the Controlled Substances Act, including 21 U.S.C. § 960,] the

7

court shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission under section 994 of title 28 without regard to any statutory minimum sentence, if the court finds at sentencing, after the Government has been afforded the opportunity to make a recommendation, that–

(1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;

(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3) the offense did not result in death or serious bodily injury to any person;

(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and

(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and

prohibitions on probation inapplicable to her. Alternatively, Dickerson urges that even if the District Court erred in sentencing her to probation, we should not reverse for plain error because she could have been sentenced to time served based on her three days of pretrial confinement. According to Dickerson, such a sentence, followed by five years of supervised release, would have had the same practical effect as a sentence of probation; therefore, says Dickerson, any error here was harmless and did not affect substantial rights.

Although our court has not previously been asked to consider the interplay between the three statutes cited by the parties as relevant to the issue here, the question does not call for a complex analysis. As other courts of appeals have indicated, the answer is dictated by common sense and basic principles of statutory construction. Four other courts of appeals have adopted the view espoused by the Government here, holding that probationary sentences are barred where a

evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

8

defendant is convicted of a class B felony, or of violating 21 U.S.C. § 960(b)(2), notwithstanding eligibility for the safety valve.[8]  See United States v. Green, 105 F.3d 1321 (9th Cir. 1997); United States v. Belt, 89 F.3d 710 (10th Cir. 1996); United States v. Snelling, 961 F.2d 93 (6th Cir. 1991); United States v. Thomas, 930 F.3d 526 (7th Cir. 1991).

We will likewise hold that such a sentence was improper here, for reasons that were ably set forth by the Court of Appeals for the Ninth Circuit in Green. There, the defendant was convicted under 21 U.S.C. § 841 – a different controlled substances law that, like § 960(b)(2), contained both a mandatory minimum and a prohibition on probation – and was also eligible for the safety valve created by § 3553(f).  In Green, the court explained:

> Green argues that there is no difference between a statutory minimum term of imprisonment and a ban on probation, and therefore that the language of § 3553(f) allows the sentencing judge to disregard both.  If this were so, then § 841(b) would create two "minimum sentences."  The ban on probation in § 841 would be unnecessary if there were not a way, such as § 3553(f), to dip

---

[8]Dickerson urges that there is a circuit split with regard to this question, and cites decisions of the First, Fourth, and Eleventh Circuits as supportive of her position. However, all of the cases mentioned by Dickerson are inapposite given the question we consider here.  It is true that the First Circuit has affirmed probationary sentences where the relevant offenses included statutory bars on probation, but this particular challenge to those sentences was not raised or examined in those cases, each of which involved unrelated challenges to the convictions or sentences. See, e.g., United States v. Sclamo, 997 F.2d 970 (1st Cir. 1993) (examining only whether the defendant's family circumstances rendered his case unusual enough to support a downward departure). The same is true of the authority relied on from the Eleventh Circuit.  See United States v. Pippen, 903 F.2d 1478 (11th Cir. 1990) (reviewing a sentence of community confinement imposed in a case where the defendant rigged bids in violation of the Sherman Act where the only challenge was not based on any statutory bans on probation, but instead was based on an argument related to the policies underlying the Guidelines applicable to this type of offense).  Finally, although the Fourth Circuit has countenanced a probationary sentence in the context of a similar drug offense, it did so before the relevant

---

controlled substances statutes were amended to include explicit bans on probation.  See United States v. Daiagi, 892 F.2d 31 (4th Cir. 1989).  As a result, its conclusion has been questioned and soundly rejected by other courts considering such a question after those amendments became effective.  See, e.g., Thomas, 930 F.2d at 528.

below the 10-year minimum imprisonment. To suggest that a court can disregard both the minium sentence and the probation ban would render the ban on probation in § 841 entirely meaningless, since every time a court avoided the 10-year minimum, it could also disregard the probation ban. Construing § 841(b) to give effect to every provision, it appears that § 841 establishes the probation ban as the ultimate floor in case the mandatory minimum sentence is somehow avoided. We therefore hold that the "notwithstanding any other provision of law" language in § 3553(f) is tied only to the ability to disregard statutory minimum terms of imprisonment; any other reading would eviscerate this ultimate floor in § 841.

Green, 105 F.3d at 1323-24; see also Thomas, 930 F.2d at 528 (containing a similar discussion of § 841 and § 3553(e), which includes language resembling that used in § 3553(f) and provides a second basis upon which a district court may impose a sentence below the statutory minimum). Adopting the reasoning quoted above, we hold that Dickerson's probationary sentence violates the statutory prohibition on sentences of probation cited by the Government and referenced by the Probation Officer in the PSR, despite Dickerson's eligibility for the safety valve provision of 18 U.S.C. § 3553.

Thus, the District Court committed error in sentencing Dickerson to probation, and we are convinced that the error was "plain," given the clarity of the statutory language and the notice included in the PSR. As to the third prong of the plain error analysis, we are persuaded that substantial rights were affected here, as Dickerson's sentence obviously would have been different had the error not been made, and Congress's interest in imprisoning certain drug offenders is a "right" to which the citizenry is entitled. We will not speculate as to what sentence the District Court would have imposed absent this error, since any sentence of imprisonment – even one of time served – would be qualitatively different from a probationary sentence. See United States v. Granderson, 511 U.S. 39, 51 (1994) (noting that probationary sentences and terms of imprisonment followed by supervised release are "sentences of unlike character"). Therefore, we conclude that the District Court committed plain error in sentencing Dickerson to probation, and that the error seriously affected the integrity of the proceedings. Accordingly, on remand, the District Court will be instructed to impose a sentence of a term of imprisonment.

### III. The Downward Departure

The second set of issues raised by the Government's appeal involves challenges to the departure for aberrant

behavior.[9]  We cannot remand for resentencing based on the plainly erroneous probationary sentence without reaching these issues, as we must also instruct the District Court whether, and to what extent, it can depart for aberrant behavior when it resentences Dickerson. In considering these issues, not only must we examine the merits of the departure and the extent to which the District Court reduced Dickerson's sentence, but we must also preliminarily consider whether and how the recently-enacted PROTECT Act impacts our standard of review in cases where departures have been granted prior to the Act's effective date.

## A.  Standard of Review

Before Congress enacted the PROTECT Act on April 30, 2003, we reviewed a sentencing court's decision to depart from the applicable Guideline range for an abuse of discretion, granting substantial deference to the district courts. See Koon v. United States, 518 U.S. 81, 98 (1996); United States v. D'Amario, 350 F.3d 348, 356 (3d Cir. 2003).  The amendments contained in the PROTECT Act modified our standard of review, requiring that we consider de novo sentences that fall beyond the range specified by the Guidelines.  Although

---

[9]We will address the Government's arguments regarding Dickerson's downward departure notwithstanding the fact that they involves sentencing issues that are completely based on the Federal Sentencing Guidelines, which have recently come under attack in the wake of the Supreme Court's decision in Blakely v. Washington, 124 S. Ct. 2531 (2004).  We do so because the question here involves the application of a downward departure, rather than an upward departure or a sentencing enhancement.  Thus, unless the entire Guidelines regime falls, the decision in Blakely is not clearly implicated here.  Further, in response to questioning by the Court at oral argument, the parties conceded that no Blakely-related problems are likely to arise on the facts of this case.

Additionally, we note that we might not normally address both the issue of the statutory prohibition on probation, as well as the propriety of a downward departure, since a finding that no departure was warranted under the Guidelines would render discussion of the ban on probation unnecessary.  But, given the uncertain future of the Guidelines, we find it prudent to reach both issues now.  On resentencing, the District Court may wish to announce an appropriate alternative non-Guideline sentence. See, e.g., United States v. Leach, No. 02-172-14, 2004 WL 1610852, at *4 (E.D. Pa. July 13, 2004).  However, such a sentence must include a term of imprisonment, as the ban on probation set forth in 21 U.S.C. §

---

960(b)(2) will continue to limit the District Court's discretion with respect to Dickerson's sentence, even if the Guidelines are ultimately held unconstitutional by this Court or the United States Supreme Court.

11

numerous other courts of appeals have already examined the PROTECT Act's impact on their standard of review, we have not yet spoken on the manner in which the new standard should be applied.

The relevant statutory review provision, as amended by the PROTECT Act, directs courts of appeals to review sentences that are "outside the applicable guideline range" de novo.[10]  Under this

amended provision, we still review any findings of fact made by the District Court for clear error.  Id.  The only question before us, then, involves the effect of the de novo review provision, which applies to determinations made under § 3742(e)(3)(A) and (B).

The Government asserts that the application here of the standard articulated in the PROTECT Act does not run afoul of the constitution, meaning that it can be

---

[10]The relevant language from 18 U.S.C. § 3742(e) reads as follows:

> Upon review of the record, the court of appeals shall determine whether the sentence–
> (1)  was imposed in violation of law;
> (2)  was imposed as a result of an incorrect application of the sentencing guidelines;
> (3) is outside the applicable guideline range, and
>> (A)  the district court failed to provide the written statement of reasons required by section 3553(c);
>> (B)  the sentence departs from the applicable guideline range based on a factor that–
>>> (i)  does not advance the objectives set forth in section 3553(a)(2); or
>>> (ii) is not authorized under section 3553(b); or
>>> (iii)  is not justified by the facts of the case; or
>> (C)  the sentence departs to an

> unreasonable degree from the applicable guidelines range, having regard for the factors to be considered in imposing a sentence, as set forth in section 3553(a) of this title and the reasons for the imposition of the particular sentence, as stated by the district court pursuant to the provisions of section 3553(c) . . . .

The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and, except with respect to determinations under subsection (3)(A) or (3)(B), shall give due deference to the district court's application of the guidelines to the facts.  With respect to determinations under subsection (3)(A) or (3)(B), the court of appeals shall review de novo the district court's application of the guidelines to the facts.

12

applied to cases on appeal in which the defendants were sentenced prior to the Act's effective date, and that the Act requires us to review de novo the propriety of a departure. Dickerson, on the other hand, contends that the Ex Post Facto clause prevents us from applying the amended standard of review to her case, as her sentence was imposed prior to April 30, 2003. Alternatively, she urges that where the district court departs based on a factor explicitly permitted by the Guidelines, such as aberrant behavior, we should review only for abuse of discretion. We reject both of Dickerson's arguments.

So far, nine other courts of appeals have published opinions in which they have applied the de novo standard set forth in the PROTECT Act to departure cases that were pending on appeal when the amendments became effective. See United States v. Bell, 371 F.3d 239 (5th Cir. 2004); United States v. Kostakis, 364 F.3d 45 (2d Cir. 2004); United States v. Daychild, 357 F.3d 1082 (9th Cir. 2004); United States v. Saucedo-Patino, 358 F.3d 790 (11th Cir. 2004); United States v. Thurston, 358 F.3d 51 (1st Cir. 2004); United States v. Andrews, 353 F.3d 1154 (10th Cr. 2003); United States v. Stockton, 349 F.3d 755 (4th Cir. 2003); United States v. Mallon, 345 F.3d 943 (7th Cir. 2003); United States v. Hutman, 339 F.3d 773 (8th Cir. 2003). Six of those opinions specifically examine, and reject, Ex Post Facto challenges to the application of the new review provisions to pending appeals. See Bell, 371 F.3d at 241-42; Kostakis, 364 F.3d at 51-52; Daychild, 357 F.3d at 1104-06; Saucedo-Patino, 358 F.3d at 792-93; Stockton, 349 F.3d at 764 & n.4; Mallon, 345 F.3d at 945-47.

We take this opportunity to join our sister circuits by holding that the PROTECT Act's de novo review provision does not implicate the Ex Post Facto Clause when applied to an appeal involving a defendant sentenced prior to the Act's effective date. Like the other courts that have considered identical challenges to the review provision of the PROTECT Act amendments, we conclude that the change to our standard of review is essentially a procedural change, rather than a substantive one. See, e.g., Kostakis, 364 F.3d at 51; Mallon, 345 F.3d at 947. The amendment does not increase the punishment for an existing offense, modify the circumstances under which a departure may be granted, criminalize previously innocent behavior, change the elements of an offense, or alter the facts that require proof at trial. Mallon, 345 F.3d at 946. Instead, the new standard of review merely "changes who within the federal judiciary" may weigh in on the decision of whether the legal standards for a departure are met, insofar as it "increase[s] the number of judges who must consider [the] issue." Id. Under these circumstances, no Ex Post Facto concerns arise when we apply the new standard of review to cases that were pending before us when the PROTECT Act took effect.

Dickerson contends, however, that even under the PROTECT Act we should review for abuse of discretion here. Her primary argument is based on a flawed

13

reading of 18 U.S.C. § 3742(e)(3)(B). Specifically, she urges that we need not conduct any inquiry under (B)(i) or (B)(ii) if the departure is based on a factor that is explicitly permitted by the Guidelines – for example, aberrant behavior. Therefore, she reasons, there is no de novo review in a case such as hers. However, upon closer examination of the language of § 3742(e)(3)(B), see supra note 10, we observe that Dickerson's argument, focused as it is on subsections (i) and (ii), ignores subsection (iii). The clear language of § 3742(e)(3)(B) includes three disjunctive subsections, and, in order to uphold the downward departure in this case, we must determine that each of the three subsections of § 3742(e)(3)(B) are satisfied. Thus, we are required to examine de novo, under subsection (iii), whether the aberrant behavior departure was justified by the facts of Dickerson's case. Dickerson's reading of § 3742(e)(3)(B) is illogical and unsupported.[11] Accordingly, her argument

---

[11]Dickerson relies heavily on a decision of the Court of Appeals for the Fifth Circuit in which that court appeared to adopt her position regarding review of departures based on factors included in the Guidelines. See United States v. Bell, 351 F.3d 672 (5th Cir. 2003). However, the Fifth Circuit subsequently withdrew that opinion and issued a new decision superseding it, modifying the court's approach to cases like this one to bring it in line with the language of the statute and the decisions of other courts. See United

regarding our standard of review must fail.

The provision of the PROTECT Act that is relevant here raises four distinct inquiries in which we, as a reviewing court, are to engage: first, did the district court provide an adequate written statement of reasons, as required by 18 U.S.C. § 3553(c), see 18 U.S.C. § 3742(e)(3)(A); second, does the sentence depart from the Guideline range based on a factor that advances the objectives set forth in 18 U.S.C. § 3553(a)(2), and is authorized under 18 U.S.C. § 3553(b), see 18 U.S.C. § 3742(e)(3)(B)(i), (ii); third, does the sentence depart from the Guideline range based on a factor that is

---

States v. Bell, 371 F.3d 239 (5th Cir. 2004). Under the Fifth Circuit's ultimate approach, the considerations enumerated in subsections (i) and (ii) are automatically fulfilled where the departure factor is one that is listed in the Guidelines, but de novo review of whether a departure is justified by the facts of the case is still required. Bell, 371 F.3d at 243-44. Thus, the Fifth Circuit no longer follows the approach suggested by Dickerson; indeed, she has pointed us to no other courts that do. Cf. Thurston, 358 F.3d at 73 (describing its similar view that factors listed in the Guidelines as permissible grounds for departure automatically satisfy the first two subsections of § 3742(e)(3)(B), but that a de novo inquiry is still necessary to determine whether subsection (iii) is satisfied as well).

14

justified by the facts of the case,[12] see 18 U.S.C. § 3742(e)(3)(B)(iii); and fourth, if a departure is warranted, was the extent of the departure granted by the district court reasonable, see 18 U.S.C. § 3742(e)(3)(C).[13]

In examining the first three questions, we are to engage in de novo review. However, as the subsection of § 3742(e)(3) that mandates the fourth question is not impacted by the PROTECT Act's de novo standard of review provision, we are to continue to apply an abuse of discretion standard as we review the extent of departures that have been properly granted.[14] See Kostakis, 364 F.3d at 51, Andrews, 353 F.3d at 1155-56.

We need not address whether the District Court's written statement was sufficiently specific in light of the requirements in 18 U.S.C. § 3553(c), as the parties do not dispute the adequacy of the written statement. The parties also do not devote significant attention to the second question described above, but, as aberrant behavior is a factor that was considered by the Sentencing Commission and included in the Guidelines as a permissible basis for departures, we have little difficulty concluding that it is a factor that advances the objectives of § 3553(a)(2) and is authorized under § 3553(b). See, e.g., Thurston, 359 F.3d at

---

[12]At this third stage of our review, we will only review whether the type of departure granted is generally warranted by the facts of the case; we will not consider whether the extent of the departure is appropriate. See, e.g., Bell, 371 F.3d 243; Thurston, 358 F.3d at 73; Andrews, 353 F.3d at 1156.

[13]Most courts to consider this PROTECT Act question have only examined whether a departure is justified, and have not discussed the first two subsections of § 3742(e)(3)(B) in great detail or considered how the analysis under those subsections might be impacted in cases involving factors included in the Guidelines. See, e.g., Hutman, 339 F.3d at 775. However, our view of the four requisite inquiries is dictated by the statute, and is consistent with each of the nine opinions of other courts listed above.

[14]Of course, we will only engage in this review of the extent of a departure in cases where, under the provisions of 18 U.S.C. § 3742(a) and (b), we have jurisdiction to hear such a challenge in the first instance. Here, our jurisdiction to engage in a review of both the propriety and the extent of Dickerson's downward departure is clearly based upon § 3742(b)(3), as the Government is appealing a sentence that falls below the relevant Guideline range. Thus, this case does not present us with the jurisdictional questions that would accompany a post-PROTECT Act appeal by a defendant of a district court's downward departure ruling. See, e.g., United States v. Linn, 362 F.3d 1261 (9th Cir. 2004); cf. United States v. Parker, 902 F.2d 221 (3d Cir. 1990); United States v. Denardi, 892 F.2d 269 (3d Cir. 1989).

73. Having disposed of the first two inquiries, our decision will turn on whether the departure for aberrant behavior was justified by the facts of Dickerson's case, and, if it was justified, whether the extent of the departure was reasonable.

## B. Discussion

We first examine the standards governing departures for aberrant behavior, as they are described in the Guideline provision itself and applied in our case law.[15] As we have previously instructed, a sentencing court is required to engage in "two separate and independent inquiries" when considering a departure for aberrant behavior under § 5K2.20. United States v. Castano-Vasquez, 266 F.3d 228, 230 (3d Cir. 2001). One inquiry asks "whether the defendant's case is extraordinary," and the other asks "whether his or her conduct constituted aberrant behavior." Id. Under the relevant Guideline provisions, the sentencing court is free to address these inquiries in any order it chooses, as long as it considers both questions. Id. at 234. As we will explain below, we do not think that the District Court adequately addressed either of these requisite inquiries when it considered Dickerson's downward departure motion.[16]

As is true whenever a court considers departing from a Guideline sentencing range, the District Court was required to find that Dickerson's case was extraordinary, or "outside the heartland" of cases, before it departed downward. See Koon v. United States, 518 U.S. 81, 95-96

---

[15]In her motion for a downward departure, Dickerson originally sought a departure based on aberrant behavior under § 5K2.20 or, more generally, based on a combination of factors under § 5K2.0. However, the "combination of factors" departure was not mentioned at sentencing by counsel or by the District Court. Here, Dickerson focuses almost exclusively on aberrant behavior as well. The other factors cited as potentially relevant under a "combination of factors" theory – for example, Dickerson's history of stable employment and her attempts to cooperate with authorities – are all factors that are subsumed within the aberrant behavior analysis. Thus, because Dickerson cites no additional factors beyond the aberrant behavior considerations, we would only place our stamp of approval on the District Court's departure ruling if her case warrants an aberrant behavior departure.

[16]Preliminarily, we note that a departure for aberrant behavior is prohibited in certain circumstances, which are described in § 5K2.20. None of those circumstances are applicable here. One of the situations listed, in which such a departure is barred, is where "the offense of conviction is a serious drug trafficking offense." Dickerson's crime is not considered to be a "serious drug trafficking offense," as defined in Application Note 1, because she is eligible for the safety valve exception to the mandatory minimum described in U.S.S.G. § 5C1.2 and 18 U.S.C. § 3553(f).

16

(1996); Castano-Vasquez, 266 F.3d at 232. In Application Note 2 to § 2.20 of the Guidelines, the Sentencing Commission has listed five considerations that may be relevant to the extraordinariness inquiry in aberrant behavior cases. The listed factors include the defendant's: "(A) mental and emotional conditions; (B) employment record; (C) record of prior good works; (D) motivation for committing the offense; and (E) efforts to mitigate the effects of the offense." U.S.S.G. § 2.20, cmt. n.2. These factors are "helpful guideposts," rather than mandatory considerations, see Castano-Vasquez, 266 F.3d at 235, but they are especially instructive as we set out to review departures like this one under the new de novo standard. The District Court did not make any finding, either explicitly or implicitly, as to the extraordinary nature of Dickerson's case, as compared to other cases involving similar crimes.

After reviewing the record before us, we are not convinced that Dickerson's case is an extraordinary one. She relies heavily upon a psychological evaluation performed prior to her sentencing to argue that her mental and emotional conditions are out of the ordinary. The conclusions contained in the report indicate that Dickerson intellectually functions at a level that is far lower than her age would imply, and that she has suffered from bouts of depression that were at times severe. While these findings might give us pause, we must contrast them with the facts that we glean from the rest of the record. For example, Dickerson's ability to function in an adult-level working environment is clear, given her completion of a job training program and her consistent employment history. Her ability to function in an advanced academic environment is also apparent, given the fact that she completed high school and spent two full years attending college. Further, the District Court quite obviously perceived Dickerson to be a capable young woman, and was impressed by her past accomplishments and her ability to cope with life in a positive manner after her arrest. Therefore, we cannot conclude that her mental and emotional conditions alone are dire enough to render her case extraordinary.

The four remaining considerations do not persuade us that Dickerson's situation falls outside the heartland of comparable drug cases. Although Dickerson's record of consistent employment, including her ability to secure and retain a job that she enjoys as the proceedings related to her offense have moved along, is commendable, it does not appear to be exceptional for someone her age. She has not offered any examples of prior good works that would distinguish her from typical defendants convicted of narcotics-related offenses. Her motivation for committing the offense was, at its core, a desire to improve her financial situation, which we believe is all too common for people who commit this type of drug courier offense. And finally, while she turned herself in and attempted to cooperate when she was questioned by Customs officials, her efforts in this regard do not rise to a level extraordinary enough

17

to support a departure.

Accordingly, we think that consideration of the circumstances of this case, guided by the factors listed by the Sentencing Commission, do not reasonably lead to the conclusion that Dickerson's case is extraordinary. We have found that aberrant behavior departures were not appropriate in cases involving ordinary facts and circumstances in situations that were comparable to this one. See, e.g., Castano-Vasquez, 266 F.3d at 230-31 (finding no showing of extraordinariness where the defendant in a heroin importation case was in his fifties, did volunteer work in his community, suffered from medical problems, and imported drugs only once to gain money to support his family after losing his ability to provide for them by farming). As the sentencing judge noted, "Dickerson fits the profile of a[] mule." The District Court did not discuss factors that would remove Dickerson's case from the heartland of defendants who commit comparable drug offenses, and we do not find any basis for a finding that Dickerson's situation is extraordinary.

Even if we were to agree with Dickerson that the facts of her case were exceptional, we would be compelled to reject her downward departure based on our analysis pursuant to the other inquiry mandated by § 5K2.20 and Castano-Vasquez. In analyzing whether Dickerson's behavior was aberrant, a sentencing court must engage in a three-pronged analysis. According to Application Note 1 to § 5K2.20, a single

criminal occurrence or transaction constitutes "aberrant behavior" if it: "(A) was committed without significant planning; (B) was of limited duration; and (C) represents a marked deviation by the defendant from an otherwise law-abiding life." U.S.S.G. § 5K2.20, cmt. n.1. All three prongs must be satisfied. Here, the District Court limited its discussion to the third factor and made no explicit or implicit findings with respect to the other two. On appeal, the Government does not contest the fact that this offense was a "marked deviation" from Dickerson's otherwise law-abiding life. However, the other two requirements – regarding planning and duration – were not considered by the District Court, and we will briefly discuss them both.

The actual planning undertaken by Dickerson in connection with this offense included the following: she engaged in a preliminary discussion of the details of her involvement with Chino a few weeks prior to her trip; she acquired $900 from Chino and used it to purchase her plane ticket; and she arranged to have a friend pick her up from the airport when she returned to the United States. Additionally, as the Government notes, we might also consider the reasonably foreseeable planning undertaken by others involved in the offense, since § 1B1.3(a)(1)(B) of the Guidelines would classify such activity as "relevant conduct" for sentencing purposes.

Regardless of whether we look to planning undertaken by others like Chino and Jose in connection with Dickerson's

trip, we do not consider this to be a case where the defendant committed the offense without significant planning. Dickerson had weeks to prepare for the offense, and she engaged in preparatory behavior during that time; she was not simply approached at the airport just before checking her luggage and asked to carry a suitcase onto the plane. Moreover, other courts have rejected departure requests on this basis where the planning involved was far less significant than it was here. See, e.g., United States v. Castellanos, 355 F.3d 56 (2d Cir. 2003) (upholding a district court's refusal to depart where the defendant made plans to buy heroin one week in advance and arrived at the transaction with a large amount of cash with which to make the purchase).

As to the duration of the offense, the record does not reveal exactly how many weeks separated the phone conversation between Chino and Dickerson, during which the plan was first discussed, from the date when Dickerson left for the Dominican Republic. However, we think that a period of "several weeks" exceeds what we would view as a limited duration in this context. A few weeks is sufficient to give a defendant time to consciously reflect on her actions and consider whether she should engage in the relevant criminal behavior. See United States v. Colace, 126 F.3d 1229, 1231 (9th Cir. 1997) (stating that offense was not of limited duration where defendant had two months "to reflect on his criminal conduct"); cf. United States v. Orrega, 363 F.3d 1093,

1098 n.7 (11th Cir. 2004) (indicating that, in the context of a criminal statute related to coercing minors to engage in sexual activity, two ninety-minute phone conversations were not "of limited duration"). Additionally, Dickerson had four days for further reflection once she arrived in the Dominican Republic. As we see it, in the context of a courier's role in a drug importation scheme, Dickerson's offense cannot be considered "of limited duration" where her involvement spanned a period of several weeks.

As we noted above, the District Court did not make findings regarding the amount of planning that was involved in the offense, the duration of Dickerson's involvement in the offense, or the extraordinary nature of this case. As is clear from our previous decisions, and from the Guidelines themselves, it is imperative that district courts demonstrate that they have engaged in the appropriate analysis and made the requisite findings before deciding whether to grant a departure. Considering the record before us and the relevant case law, we see no reasonable basis for finding that Dickerson's actions "lacked significant planning" or were "of limited duration," or that her situation is removed from the heartland of cases involving minor participants in drug importation schemes. We therefore conclude that no downward departure for aberrant behavior is justified by the facts of this case, and we will instruct the District Court to resentence Dickerson to a term of imprisonment that falls within the applicable Guideline

range.[17]

## IV. Conclusion

As we have explained above, the District Court committed plain error in sentencing Dickerson to a term of probation in the face of explicit statutory prohibitions on such a sentence. The District Court also erred in granting a downward departure for aberrant behavior on the facts of this case. Accordingly, we will vacate Dickerson's sentence and remand for resentencing consistent with this opinion, at which time the District Court shall impose a sentence within the appropriate Guideline range of 30 to 37 months.

---

[17]Because we conclude that no downward departure is warranted, we need not engage in an examination of whether the extent of the departure granted here was unreasonable as the Government alternatively argues. However, we feel compelled to note that the District Court granted a staggering eleven-level departure without any explanation of why such a departure was called for, and thus reasonable, under these circumstances. The Court did note a desire to avoid any interruption to Dickerson's rehabilitation that would be caused by a sentence of imprisonment. However, under our precedent, sentencing courts are instructed to arrive at a reasonably sized departure by analogizing to other Guideline provisions, and we have remanded where district courts have failed to provide an adequate explanation. See United States v. Jacobs, 167 F.3d 792, 800 (3d Cir. 1999) (citing United States v. Kikumura, 918 F.2d 1084, 1113 (3d Cir. 1990)). But, given our determination that the departure was not warranted in the first instance, we need not rule on this issue.