UNITED STATES of America

v.

**Angela WATSON, Defendant.**

**No. CRIM.A. 06–0005.**

United States District Court,
E.D. Pennsylvania.

Sept. 29, 2006.

Paul Mansfield, Esquire, United States Attorney's Office, Philadelphia, PA, for Plaintiffs.

Lynanne B. Wescott, Esquire, Philadelphia, PA, for Defendants.

## MEMORANDUM & ORDER

KATZ, Senior District Judge.

### I. Introduction

Before the court is Defendant's motion for a downward departure under U.S.S.G. § 5K2.20. The court has considered the motion and heard arguments on the motion (at the sentencing hearing) from both Defendant and the government. For the reasons set forth below, Defendant's motion is denied.

### II. Summary of Facts

On January 5, 2006, Defendant was indicted on two counts of bank robbery in violation of 18 U.S.C. § 2113(a). On March 14, 2006, Defendant pleaded guilty to both counts. At the sentencing hearing, the court adopted as findings of fact those factual statements contained in the Presentence Investigation Report as to which there was no objection. These facts are summarized below.

#### A. The Two Robberies

At approximately 4:10 p.m. on November 4, 2005, Defendant entered the Bank of America N.A. branch at 616 Old York Road in Jenkintown, Pennsylvania and approached a teller. She gave the teller a handwritten note that read "I HAVE A GUN GIVE ME THE MONEY NOW! NO DYE PACKS!!!!" (The word "GUN" was underlined in the original note.) The teller gave Defendant $850 in an envelope. Defendant then left the bank.

At approximately 4:46 p.m. on the same day, Defendant entered the Citizens Bank branch at 6201 N. 5th Street, Philadelphia, Pennsylvania. After waiting in line for several minutes, she handed a teller a hand-written note that read "I HAVE A GUN GIVE ME THE MONEY NOW! NO DYE PACKS!!! LARGE BILLS FIRST." (Again, the word "GUN" was

underlined in the original note.) The teller gave Defendant $650, including $50 in "bait bills," in a Citizens Bank envelope. Defendant then left the bank.

Soon after the second robbery, Defendant was apprehended by local police, who recovered a Citizens Bank envelope containing $650 (including the $50 in "bait bills") from one of Defendant's pockets. After being arrested and charged, Defendant accepted personal responsibility for her criminal conduct and assisted the government in the investigation and prosecution of her misconduct by timely notifying it of her intention to plead guilty. Aside from this case and an outstanding arrest warrant (issued on September 27, 2005) on charges of identity theft and fraud, Defendant has no criminal record.

### B. Defendant's Background and Current Situation

Defendant is 22 years old. Aside from her parents' divorce and her frequent changes of address, Defendant's childhood was relatively normal. After graduating from high school in June 2002, Defendant attended Temple University (Philadelphia, Pennsylvania) full-time from September 2002 to December 2002, majoring in international business management. Defendant was then academically dismissed from Temple and moved to Georgia to live with her mother. From June 2003 to August 2004, Defendant attended the University of West Georgia ("UWG") (Carrollton, Georgia), where she earned a 3.46 grade point average as a communications major. Defendant withdrew from UWG in August 2004 because of difficulty living with her mother in Georgia. From August 2004 to May 2005, Defendant attended George Mason University ("GMU") (Fairfax, Virginia), where she also majored in communications. Defendant withdrew from GMU because of difficulty living with her father. Defendant then moved to Philadelphia and moved in with her boyfriend; she was living with him when she committed her offenses of conviction.

Defendant has worked sporadically as her college education has progressed. Her employment records reveal short stints with 5 employers in Washington, D.C. and Philadelphia in 2005, and Defendant reported that she worked for her mother (who is a lawyer) as a legal secretary in 2003 and 2004. In 2001, Defendant interned with an Ohio Congresswoman (for the summer), and worked at Gap, Inc., CVS, and Clothesline Stores.

Although Defendant did not report a history of mental health treatment or mental health symptoms, Defendant has attempted suicide twice—in 2002 and 2005. Moreover, according to Defendant, she began smoking marijuana in the summer of 2002 and has been smoking approximately seven to ten blunts per day since then. (Defendant says she was drunk and high when she committed her offenses of conviction.) She has not smoked any marijuana since being arrested in this case.

At the request of defense counsel, psychiatrist Dr. Richard Frederick Limoges, M.D., recently examined Defendant. According to Dr. Limoges' report, dated September 5, 2006, there is no evidence that Defendant suffers from a current formal thought disorder, and Defendant's mood is "ebullient and inappropriately carefree given her circumstances." Dr. Limoges also found that Defendant manifests the signs and symptoms of Bipolar II Disorder, Cannabis Abuse and/or Dependence (in remission due to incarceration), and Dependent Personality Disorder.

### III. U.S.S.G. § 5K2.20

Section 5K2.20 of the United States Sentencing Guidelines—Aberrant Behavior (Policy Statement)—reads as follows:

(a) In General.—Except where a defendant is convicted of an offense involving a minor victim under section 1201, an

offense under section 1591, or an offense under chapter 71, 109A, 110, or 117, of title 18, United States Code, a downward departure may be warranted in an exceptional case if (1) the defendant's criminal conduct meets the requirements of subsection (b); and (2) the departure is not prohibited under subsection (c).

(b) Requirements.—The court may depart downward under this policy statement only if the defendant committed a single criminal occurrence or single criminal transaction that (1) was committed without significant planning; (2) was of limited duration; and (3) represents a marked deviation by the defendant from an otherwise law-abiding life.

(c) Prohibitions Based on the Presence of Certain Circumstances.—The court may not depart downward pursuant to this policy statement if any of the following circumstances are present:

(1) The offense involved serious bodily injury or death.

(2) The defendant discharged a firearm or otherwise used a firearm or a dangerous weapon.

(3) The instant offense of conviction is a serious drug trafficking offense.

(4) The defendant has either of the following: (A) more than one criminal history point, as determined under Chapter Four (Criminal History and Criminal Livelihood) before application of subsection (b) of § 4A1.3 (Departures Based on Inadequacy of Criminal History Category); or (B) a prior federal or state felony conviction, or any other significant prior criminal behavior, regardless of whether the conviction or significant prior criminal behavior is countable under Chapter Four.

*Id.* (2006). The Application Notes to this Section read as follows:

1. Definitions.—For purposes of this policy statement:

"Dangerous weapon," "firearm," "otherwise used," and "serious bodily injury" have the meaning given those terms in the Commentary to § 1B1.1 (Application Instructions).

"Serious drug trafficking offense" means any controlled substance offense under title 21, United States Code, other than simple possession under 21 U.S.C. § 844, that provides for a mandatory minimum term of imprisonment of five years or greater, regardless of whether the defendant meets the criteria of § 5C1.2 (Limitation on Applicability of Statutory Mandatory Minimum Sentences in Certain Cases).

2. Repetitious or Significant, Planned Behavior.—Repetitious or significant, planned behavior does not meet the requirements of subsection (b). For example, a fraud scheme generally would not meet such requirements because such a scheme usually involves repetitive acts, rather than a single occurrence or single criminal transaction, and significant planning.

3. Other Circumstances to Consider.— In determining whether the court should depart under this policy statement, the court may consider the defendant's (A) mental and emotional conditions; (B) employment record; (C) record of prior good works; (D) motivation for committing the offense; and (E) efforts to mitigate the effects of the offense.

*Id.* cmt. (2006).

## IV. Discussion [1]

■ To qualify for a downward departure under U.S.S.G. § 5K2.20, the sentenc-

---

1. In applying the Sentencing Guidelines, the court is mindful that:

[T]he Supreme Court made clear in *United States [v. Booker,* 543 U.S. 220, 125 S.Ct.

ing court must find: (1) that defendant satisfies the requirements of Subsection (b), (2) that the departure is not prohibited under Subsection (c), and (3) that defendant's case is "exceptional."[2,3] Assuming *arguendo* that requirements (1) and (2) are satisfied here, the court will deny Defendant's motion for a downward departure under § 5K2.20, because her case is not "exceptional."

■ Application Note 3 to § 5K2.20 lists five factors that the court may consider in deciding whether Defendant's case is "exceptional" (and, more broadly, in deciding whether to grant a downward departure for aberrant behavior); specifically, the court may consider Defendant's: "(A) mental and emotional conditions, (B) employment record, (C) record of prior good works, (D) motivation for committing the offense, and (E) efforts to mitigate the effects of the offense." U.S.S.G. § 5K2.20, cmt. n. 3 (2006). Although these factors are "helpful guideposts for the court," *United States v. Castano–Vasquez*, 266 F.3d 228, 235 (3d Cir.2001), "[n]othing in the application note either obligates the court to consider these factors or intimates that the list is exhaustive." *Id.* (holding that the sentencing court did not err where it denied defendant's § 5K2.20 downward departure motion and expressly mentioned only two of the five factors after hearing argument on all five). Thus, despite Application Note 3's guidance, the determination of whether Defendant's case is "exceptional" within the meaning of § 5K2.20(a) ultimately is entrusted to "the sound discretion of the sentencing court." *Id.* at 233.

■ Defendant's case is not "exceptional" within the meaning of § 5K2.20(a), because it is analogous to *United States v. Dickerson*, 381 F.3d 251 (3d Cir.2004). In *Dickerson*, the Third Circuit reversed the sentencing court's decision to grant defendant's § 5K2.20 downward departure motion, because defendant's case neither was "extraordinary" nor satisfied the requirements of § 5K2.20(b). (The court is aware that the *Dickerson* court's *de novo* review of whether this departure was justified by the facts of the case, which is *verboten* post-*Booker*, strips *Dickerson's* § 5K2.20 holding of its binding precedential force. Nevertheless, the court believes *Dicker-*

---

738, 160 L.Ed.2d 621 (2005)] that the Guidelines are now advisory. Thus, district courts, post-*Booker*, exercise broad discretion in imposing sentences, so long as they begin with a properly calculated Guidelines range, fully consider the broad range of factors set forth in 18 U.S.C. § 3553(a), and all grounds properly advanced by the parties at sentencing.
*United States v. Vampire Nation*, 451 F.3d 189, 196 (3d Cir.2006).

**2.** Section 401(b)(3) of Public Law No. 108–21, 117 Stat. 650 (2003) amended U.S.S.G. § 5K2.20 by, *inter alia*, replacing the word "extraordinary" in § 5K2.20(a) with the word "exceptional." (This amendment became effective on April 30, 2003.) The court is aware of only one reported case that has discussed this particular amendment, and in that case, the Fourth Circuit concluded that the amendment did not expand § 5K2.20's "scope of

coverage." *United States v. May*, 359 F.3d 683, 692 (4th Cir.2004) ("Because the amendment was intended to 'further restrict [ ] the availability of departures, based on aberrant behavior,' U.S.S.G. app. C., amend. 651, we do not view this amendment as expanding the scope of coverage."). The court agrees with the Fourth Circuit's assessment of this amendment, especially since at least two other district courts have ignored it in cases where it should have been noted. *See United States v. Palma*, 376 F.Supp.2d 1203, 1213, 1219–20 (D.N.M.2005) (ignoring this amendment); *United States v. Hued*, 338 F.Supp.2d 453, 458 ·(S.D.N.Y.2004) (ignoring this amendment).

**3.** This case involves none of the sections or chapters of title 18, U.S.C. that are excluded from the application of § 5K2.20 in Subsection (a).

*son*'s analysis helps illuminate the meaning of the otherwise amorphous phrase "exceptional case.")

The defendant in *Dickerson*, a 24 year old woman with overdue student loans, was convicted of importing more than 100 grams of heroin after she agreed to serve as a drug courier (in exchange for $2,500 to $3,000) and was arrested during a customs interview upon returning from the Dominican Republic with 27 pellets of heroin in her body. *Id.* at 254. At sentencing, the District Court heard argument that defendant's case was extraordinary, "based on the considerations listed in the commentary following the aberrant behavior policy statement." *Id.* at 255.

> [Defense counsel] argued that Dickerson's poor performance on psychological tests measuring intelligence, along with her history of emotional problems including depression, placed her situation outside the heartland of drug courier cases. He contended that Dickerson was particularly depressed at the time of the offense, and that the brief duration of the offense did not allow her time to reflect on her actions. He also emphasized her lack of any prior convictions, her desire to complete college, and her steady employment history. In closing, he argued that a term of imprisonment would disrupt Dickerson's ongoing rehabilitative efforts.

*Id.* The court granted defendant's motion, and in support of its decision, it noted defendant's accomplishments prior to her offense, her efforts to get a job and get her life back on track, her lack of prior criminal conduct, her willingness to cooperate with the government, and the fact that she had been exploited by drug traffickers. *Id.*

The Third Circuit was unimpressed.

> After reviewing the record before us, we are not convinced that Dickerson's case is an extraordinary one. She relies heavily upon a psychological evaluation performed prior to her sentencing to argue that her mental and emotional conditions are out of the ordinary. The conclusions contained in the report indicate that Dickerson intellectually functions at a level that is far lower than her age would imply, and that she has suffered from bouts of depression that were at times severe. While these findings might give us pause, we must contrast them with the facts that we glean from the rest of the record. For example, Dickerson's ability to function in an adult-level working environment is clear, given her completion of a job training program and her consistent employment history. Her ability to function in an advanced academic environment is also apparent, given the fact that she completed high school and spent two full years attending college. Further, the District Court quite obviously perceived Dickerson to be a capable young woman, and was impressed by her past accomplishments and her ability to cope with life in a positive manner after her arrest. Therefore, we cannot conclude that her mental and emotional conditions alone are dire enough to render her case extraordinary.
>
> The four remaining considerations do not persuade us that Dickerson's situation falls outside the heartland of comparable drug cases. Although Dickerson's record of consistent employment, including her ability to secure and retain a job that she enjoys as the proceedings related to her offense have moved along, is commendable, it does not appear to be exceptional for someone her age. She has not offered any examples of prior good works that would distinguish her from typical defendants convicted of narcotics-related offenses. Her motivation for committing the offense was, at its core, a desire to improve her financial

situation, which we believe is all too common for people who commit this type of drug courier offense. And finally, while she turned herself in and attempted to cooperate when she was questioned by Customs officials, her efforts in this regard do not rise to a level extraordinary enough to support a departure.

*Id.* at 265.[4]

In light of *Dickerson*, this court, in the exercise of its post-*Booker* discretion, will deny Defendant's motion for a downward departure under U.S.S.G. § 5K2.20, because, as in *Dickerson*, Defendant's case is not "exceptional." Like Dickerson, Defendant "relies heavily on a psychological evaluation performed prior to her sentencing to argue that her mental and emotional conditions are out of the ordinary." *Id.* Dickerson's psychological evaluation revealed low intellectual ability and sometimes severe depression; Defendant's psychological evaluation revealed Bipolar II Disorder, Cannabis Abuse and/or Dependence, and Dependent Personality Disorder. (Defendant also has said she was drunk and high when she committed her offenses of conviction.) Also like Dickerson, however, Defendant possesses at least

some ability to function in an "adult-level working environment" and an "advanced academic environment." Defendant has studied at a university every year since her graduation from high school in 2002, and, with the exception of 2002, she has worked every year since 2001. Defendant's accomplishments and ability may not be as impressive as Dickerson's, but it is clear that, notwithstanding Defendant's claim that she was drunk and high when she committed her offenses,[5] this court, like the Third Circuit in *Dickerson*, "cannot conclude that [Defendant's] mental and emotional conditions alone are dire enough to render her case extraordinary." *Id.*

As in *Dickerson*, "[t]he four remaining considerations do not persuade [the court] that [Defendant's] situation falls outside the heartland of comparable ... cases." *Id.* As with Dickerson, Defendant's record of employment is "commendable," but "it does not appear to be exceptional for someone her age." *Id.* Moreover, like Dickerson, Defendant "has not offered any examples of prior good works that would distinguish her from typical defendants convicted of [similar] offenses." *Id.* Defendant's motivation for committing her offenses is unclear, but there is no indica-

---

4. The *Dickerson* court also cited *U.S. v. Castano–Vasquez*, 266 F.3d 228 (3d Cir.2001) to support its conclusion that defendant's case was not "extraordinary" within the meaning of § 5K2.20, 381 F.3d at 255, but this court does not believe *Castano–Vasquez* is instructive on this point. It is true that *Castano–Vasquez* affirmed the sentencing court's denial of defendant's § 5K2.20 motion for a downward departure. However, in doing so, the Third Circuit made it clear that it "exercise[d] plenary review over whether the District Court adopted the proper legal standard for interpreting and applying [§ 5K2.20]," but that it "lack[ed] jurisdiction to review a refusal to depart downward when the district court, knowing it may do so, nonetheless determines that departure is not warranted." 266 F.3d 228 at 231. Thus, the propriety of the sentencing court's refusal to depart down-

ward was not before the *Castano–Vasquez* court; that court considered only whether the sentencing court adopted the appropriate legal standard for interpreting and applying § 5K2.20—something that would be *verboten* post-*Booker*. (Recall that *Castano–Vasquez* held that the sentencing court did not err where it denied defendant's § 5K2.20 downward departure motion and expressly mentioned only two of the five factors after hearing argument on all five.)

5. In this court's view, Defendant's habitual intoxication—i.e., smoking seven to ten marijuana blunts per day during the four years leading up to her offenses—precludes a finding that her intoxication on November 4, 2005 made her mental or emotional condition exceptional or aberrant.

tion that it makes her case "exceptional." Finally, although Defendant accepted personal responsibility for her criminal conduct and timely notified the government of her intention to plead guilty, her efforts to mitigate the effects of her offenses, like Dickerson's, do not contribute enough to make her case "exceptional." [6] Therefore, the court will deny Defendant's motion for a downward departure under § 5K2.20, because her case is not "exceptional."

### V. Conclusion

For the reasons set forth above, Defendant's motion for a downward departure under U.S.S.G. § 5K2.20 is denied.

An appropriate Order follows.

### ORDER

**AND NOW,** this 29th day of September, 2006, upon consideration of Defendant's motion for a downward departure under U.S.S.G. § 5K2.20, and after a sentencing hearing, it is hereby **ORDERED** that said motion is **DENIED.**

---

6. In this regard, the court finds it particularly significant that Defendant has not returned the $850 that she stole from the Bank of America branch.