United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 19, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 03-20194

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

RUBY D. HENRY BELL,

Defendant-Appellee.

--------------------
Appeal from the United States District Court
for the Southern District of Texas

--------------------

Before JOLLY and WIENER, Circuit Judges, and WALTER,[*] District Judge.

PER CURIAM:

Defendant-Appellee Ruby D. Henry Bell was convicted on a plea of guilty for using a telephone to convey a false threat to damage or destroy a building by means of an explosive, in violation of 18 U.S.C. § 844(e).[1]  At sentencing, the district court granted a

---

[*] District Judge for the Western District of Louisiana, sitting by designation.

[1] The original panel opinion in this case issued November 20, 2003.  The government filed a petition for rehearing en banc, contending that we had misconstrued the new standard of review provisions contained in the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003 —— the PROTECT Act —— Pub. L. 108-21, 117 Stat. 650 (April 30, 2003).  The arguments contained in that petition, combined with subsequent interpretations of the PROTECT Act by other circuits, have convinced us that revisions to our discussion of the PROTECT Act's new standard of review are appropriate.  Accordingly, we withdraw our prior opinion, published at United States v. Bell,

defense motion to depart downward within the U.S. Sentencing Guidelines ("U.S.S.G." or the "Guidelines") from a criminal history category of VI to a criminal history category of IV. The district court appears to have granted this motion on the basis of overstatement of criminal history, as provided for by Guidelines § 4A1.3; however, the sentencing colloquy also discussed Bell's mental health issues and the court's concern that incarceration would lead to a break in her mental health treatment, which the court wanted to avoid. Because the district court conflated the elements of several distinct Guidelines provisions in its discussion of the downward departure, making the true basis for that departure unclear, we vacate and remand for resentencing.

## I.  Facts and Proceedings

In an apparent attempt to force the cancellation or postponement of her probation hearing, Bell telephoned police and mendaciously informed them that Pakistani terrorists had planted a bomb at the Brazos County Courthouse in Bryan, Texas. Acting on Bell's false report, state and local police, as well as the FBI, initiated an intense investigation, which resulted initially in the arrest and incarceration of a Pakistani immigrant.[2]  Cellular telephone records helped the police identify Bell as the caller, after which she was indicted and charged under 18 U.S.C. § 844(e).

Bell pleaded guilty to the indictment, and the pre-sentence

---

351 F.3d 672 (5th Cir. 2003), and substitute this one, albeit our judgment in Ms. Bell's case remains the same.

[2] The investigation uncovered the fact that the arrested individual had forged documents to enter the United States.

report (PSR) recommended a total offense level of 6, a criminal history category of VI, and a guideline imprisonment range of 12 to 18 months. Bell did not object to the PSR,[3] but she made a motion for downward departure, which the district court granted, revising her criminal history category downward from VI to IV. This departure made Bell eligible for probation, and the court assessed a "term of probation" of three years, subject to conditions that included six months' home confinement, community service, and participation in treatment programs for drug and alcohol addiction and mental health.

## II.  Analysis

On April 30, 2003, the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003 — the PROTECT Act (the "Act") — was signed into law.[4] The Act changed the standard of review courts of appeals apply when considering some aspects of sentencing departures, essentially establishing a two-tier review of such departures. Because the Act became effective after Bell was sentenced and after the government filed its notice of appeal, we must decide (1) whether the Act applies retroactively to litigants in Bell's position, and (2) if so, how the new standard of review is properly applied in the instant case, given the circumstances surrounding the district court's departure and its reasons for departing.

---

[3] Bell did correct two factual inaccuracies in the PSR, but neither is relevant to our discussion today.

[4] Pub. L. 108-21, 117 Stat. 650 (April 30, 2003).

A.  Retroactivity

Prior Fifth Circuit panels have examined retroactive application of newly-announced standards of review.  In United States v. Mejia, we characterized a change in the standard of review as "procedural rather than substantive because it neither increases the punishment nor changes the elements of the offense or the facts that the government must prove at trial."[5]  As the Supreme Court has long held that procedural changes in the law may be applied retroactively without violating the Constitution's ban on *ex post facto* laws,[6] we held in Mejia that the trial court correctly applied a standard of review that was announced after the actions that led to the criminal charge in that case.

Other circuit courts that have considered the Act's standard-of-review provision have based their ultimate decision — to apply such standard retroactively[7] — on that well-known procedural/substantive dichotomy.[8]  As the First Circuit explained

_____

[5] 844 F.2d 209, 211 (5th Cir. 1988).

[6] See, e.g., Miller v. Florida, 482 U.S. 423, 430 (1987)("[N]o *ex post facto* violation occurs if a change does not alter 'substantial personal rights,' but merely changes 'modes of procedure which do not affect matters of substance.'" quoting Dobbert v. Florida, 432 U.S. 282, 293 (1977)); Lindh v. Murphy, 521 U.S. 320, 327 (1997)(noting that if the statute at issue "were merely procedural in a strict sense (say, setting deadlines for filing and disposition ...), the natural expectation would be that it would apply to pending cases.")(citation omitted).

[7] See, e.g., United States v. Mallon, 345 F.3d 943, 946-47 (7th Cir. 2003); United States v. Willey, 350 F.3d 736, 738-39 (8th Cir. 2003).

[8] Although the Eighth Circuit, in United States v. Hutman, 339 F.3d 773 (8th Cir. 2003), simply applied the de novo standard summarily, it did cite to Mejia, indicating that the

4

in United States v. Thurston,

> The change of a standard of appellate review is one in procedure for the courts; procedural changes that do not affect substantial rights are not usually considered impermissibly retroactive .... The PROTECT Act's alteration of the appellate standard of review upsets no legitimate reliance interest by a defendant; it could not have induced alteration of the behavior that led to the crime. We see no unfairness to defendants in Congress's requiring a closer look by appellate courts at whether a district court committed an error in deciding that the guidelines permitted a departure. It is the substance of the sentencing rules, both in the Guidelines and in the underlying statutes, that affects defendants.[9]

We agree with that assessment of the issue, and conclude that the Act's de novo standard of review is applicable in cases, like the instant one, in which sentencing occurred before the Act's enactment date. This comports with the Supreme Court's retroactivity jurisprudence as well as our prior holding in Mejia.

B. Application of the De Novo Standard

Prior to the Act, we reviewed a district court's decision to depart from the Guidelines for abuse of discretion.[10] The Act explicitly changed the standard of review, but only when courts of appeals consider "determinations under subsection 3(A) or 3(B)" of 18 U.S.C. § 3742(e), which subsections encompass (1) the district

---

procedural/substantive distinction was the basis for that part of its holding.

[9] 358 F.3d 51, 71-72 (1st Cir. 2004)(citation, footnote omitted).

[10] See United States v. Harris, 293 F.3d 863, 871 (5th Cir. 2002) ("We review a district court's departure from the range established by the Guidelines for abuse of discretion. ... The district court's decision is accorded substantial deference because it is a fact intensive assessment and the district court's findings of fact are reviewed for clear error.")(citation omitted).

5

court's issuance of a written statement of reasons for the departure, and (2) the legality of, justification for, and objectives advanced by the factors on which the departure was based. The relevant statutory language, dealing with guideline departures and their review, is as follows:

> (e) Consideration. Upon review of the record, the court of appeals shall determine whether the sentence—
>
> ....
>
> (3) is <u>outside the applicable guideline range</u>, and
>
>> (A) the district court <u>failed to provide the written statement of reasons</u> required by section 3553(c);
>>
>> (B) the sentence <u>departs</u> from the applicable guideline range <u>based on a factor that</u>—
>>
>>> (i) does <u>not advance the objectives</u> set forth in section 3553(a)(2); or
>>>
>>> (ii) is <u>not authorized under section 3553(b)</u>; or
>>>
>>> (iii) is <u>not justified</u> by the facts of the case; or
>>
>> (C) the sentence <u>departs to an unreasonable degree</u> from the applicable guidelines range, having regard for the factors to be considered in imposing the sentence, as set forth in section 3553(a) of this title and the <u>reasons for the imposition of the particular sentence, as stated by the district court pursuant to the provisions of section 3553(c)</u>; ...
>
> ....
>
> The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and, <u>except with respect to determinations under subsection (3)(A) or (3)(B), shall give due deference to the district court's application of the guidelines to the facts. With respect to determinations under subsection (3)(A) or (3)(B), the court of appeals shall review de novo</u> the district court's application of the guidelines to

6

the facts.[11]

We read this language as mandating a two-tier review of guideline departures, which are addressed generally by subsection (3). First, we must review <u>de novo</u> the sentencing court's decision to depart (under subsection (3)(B)), determining whether the departure is based on appropriate factors and taking into account the statutory provisions listed in (3)(B)(i) and (ii), the facts of the case under review, and the sentencing court's application of the guidelines to those facts.[12] Second, if we find the decision to depart to be appropriate, we must review the <u>degree</u> of that departure for abuse of discretion, based on the sentencing court's written statement of reasons for the departure provided pursuant to § 3553(c). Other courts of appeal that have considered the Act's new standard of review provisions have also concluded that such a two-tier framework is appropriate.[13]

1. <u>The decision to depart</u>

The stated basis for Bell's sentencing departure, noted in the district court's written statement of reasons, was that Bell's criminal history category over-represented the seriousness of her

---

[11] 18 U.S.C. § 3742(e) (emphasis added).

[12] The Act also requires <u>de novo</u> review of the question whether the district court "failed to provide the written statement of reasons required by section 3553(c)." 18 U.S.C. § 3742(e)(3)(A). The district court did provide such a written statement of reasons in the instant case (although there is some question as to its adequacy, which is discussed in section II.B.2, <u>infra</u>), so subsection (e)(3)(A) is inapplicable.

[13] <u>See, e.g.</u>, <u>United States v. Mallon</u>, 345 F.3d 943, 946 (7th Cir. 2003); <u>United States v. Jones</u>, 332 F.3d 1294, 1299 (10th Cir. 2003).

past offenses, thus warranting a departure under U.S.S.G. § 4A1.3(b)(1). This "factor" on which the departure was based clearly meets section 3742(e)(3)(B)(i) and (ii)'s requirements, in that this basis for departure has already been considered and approved by the Sentencing Commission. We agree with the First Circuit that, "in reviewing a departure under § 3742(e)(3)(B)(i) and (ii), [we] must accept and may not look behind the Sentencing Commission's determination that a particular categorical basis for departure is permissible or impermissible."[14] We must nevertheless conduct our review under subsection (3)(B)(iii) and decide whether the departure on that basis is "justified by the facts of the case." This task is complicated by the facts that (1) we must endeavor to do so without reviewing the degree of the departure, as the latter is to be reviewed under subsection (3)(C), and (2) we must employ our traditional abuse of discretion standard — not the Act's newly-imposed de novo review — regarding that prong of the analysis.[15]

_____

[14] U.S. v. Thurston, 2004 U.S. App. LEXIS 1658, *59 (Feb. 4, 2004).

[15] We note also that, as a practical matter, when determinations under subsection (3)(B)(i) and (ii) are necessary — i.e., where the factor on which the departure was based has not already been approved by the Sentencing Commission — review under these subsections becomes almost nonsensical under the Act's new framework. Specifically, it seems impossible to determine whether a departure advances the objectives set forth in section 3553(a)(2), which include reflecting the seriousness of the offense, providing adequate deterrence, and providing the defendant with adequate correctional treatment, without considering the degree of the departure and the actual sentence imposed. The degree of departure, however, is to be reviewed only for abuse of discretion under subsection (3)(C), by the express language of the Act. If the degree of the departure is

8

As we review the degree of the departure for abuse of discretion only, which makes sense in light of the district court's superior vantage point to make that fact-intensive determination, we conclude that the review under subsection (3)(B)(iii) is more generalized, asking whether a departure (as opposed to the specific departure granted) on the grounds proffered can be justified under the facts of the case. Even that limited inquiry, however, is impossible in the instant case because of the absence of specificity in the district court's written statement of reasons and its apparent conflation of several different grounds for departure.

Our concerns on this point center on the district court's apparent grounding of its decision to depart in factors that it did not discuss in its written statement of reasons. For instance, in the sentencing colloquy, the district court voiced concern that any period of incarceration would necessarily entail a break in Bell's mental health treatment:

> So I'm conflicted between my strong desire to see Ms. Bell punished for her actions ... and my concern about a [sic] creating a break in her mental health treatment that she's currently receiving, which I think would be the unfortunate result of a period of incarceration.... [E]ven [though] the potential period of incarceration is so limited, I think that there is a significant likelihood that there would be a break in her mental health treatment and counseling that would be too long, and ... we're talking about ... putting Ms. Bell back into the community in not as good a mental health state

considered in any substantive way while making determinations under subsection (3)(B), we would effectively be expanding de novo review to the degree of the departure, thus rendering review under subsection (3)(C) superfluous and contradicting the express statutory directive.

9

> as she currently has as a result of that break in treatment. So I'm going to grant the motion for downward departure on this basis, on the basis of the criminal history issue. (emphasis added).

This concern for Bell's mental health treatment was not addressed in the district court's statement of reasons required by 3553(c), yet it appears to be a "factor" on which the downward departure was based. The statutory framework is unclear as to whether a reviewing court may consider "factors" that are not discussed in the written statement of reasons when making determinations under subsection (3)(B). As the written statement of reasons is also crucial to our determination under subsection (3)(C) regarding the degree of the departure,[16] we conclude that we must require clarification from the district court of its reasoning in any event, which in turn requires a remand.

## 2. The sentencing colloquy vis-à-vis the written statement of reasons

The district court appears to have conflated several separate grounds for departure, as reflected in the text of the sentencing colloquy. That colloquy evidences the district court's desire to prevent an interruption in Bell's mental health treatment, its belief that her "mental health problems" were a factor in her previous crimes, and its finding that "her diminished capacity has been aggravated somewhat by the fact that she was overmedicated for a time." In contrast, the court's written statement of reasons

---

[16] 18 U.S.C. § 3742(e)(3)(C) indicates that we should consider "the reasons for the imposition of the particular sentence, as stated by the district court pursuant to the provisions of section 3553(c)."

10

indicates only that "the nature of the defendant's criminal history, which is comprised mostly of non-violent, petty theft offenses, overrepresents her criminal history category."

This contrast in reasons raises questions as to both the propriety of the decision to depart and the reasonableness of the degree of that departure. In United States v. Thames, we held that "the guidelines have already adequately taken into consideration a defendant's mental capacity with § 5K2.13, and thus § 5K2.0 is inapplicable to [the defendant's] claim that his diminished mental capacity, derived from his gambling addiction, entitles him to consideration for a downward departure."[17] Obviously, this means that mental capacity may only be taken into account in certain ways in this circuit, and the written statement of reasons provides no clues as to how the district court considered this factor.

The defendant in Thames had argued that "his mental condition made his criminal conduct 'inadvertent behavior,'" essentially trying to argue diminished capacity under U.S.S.G. § 5K2.0 instead of § 5K2.13.[18] Here, by contrast, it seems that three distinct factors —— (1) the district court's finding that Bell had been over-medicated for a period of time,[19] (2) Bell's history of mental

---

[17] 214 F.3d 608, 615 (2000). U.S.S.G. § 5K2.0(a) allows a district court to base a departure on "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines...."

[18] Thames, 214 F.3d at 614.

[19] Even though the government continues to contest the downward departure, it conceded during the sentencing hearing that it "[did not] doubt that [Bell's] being overmedicated by the

11

illness, and (3) the district court's belief that Bell was "receiving adequate mental health treatment and counseling" at the time of sentencing and that interruption of that treatment would not "serve the defendant or the society well" —— were relied on by the district court as justification for its ruling that a criminal history category of VI "substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes."[20]

It would not necessarily be improper for a district court to find that a history of over-medication by psychotropic drugs, combined with prior offenses that are nonviolent, "petty" crimes, are adequate bases for the downward departure allowed here under U.S.S.G. § 4A1.3. Neither would it necessarily be improper for a district court to justify this downward departure under Guidelines § 5K2.0 on the court's determination to prevent a break in mental health treatment based on factual findings that incarceration would occasion such a break and thereby be detrimental to the interests of society and the defendant. At the same time, our Thames decision forecloses consideration of mental health as an indicator of diminished capacity regarding the crimes at issue, except under U.S.S.G. § 5K2.13.[21]

---

psychotropic drugs that she was taking is a factor in this case ..."

[20] U.S.S.G. § 4A1.3(b)(1).

[21] As was the case in Thames, a downward departure under U.S.S.G. § 5K2.13 is not available to Bell because her crime involved a "serious threat of violence."

The sentencing court's written statement of reasons is unclear, however, as to which one or more of the foregoing factual possibilities, if any, is applicable in the instant case. The district court might have improperly considered Bell's mental health in contravention of <u>Thames</u>; or it might have examined factors under Guidelines §§ 4A1.3 and 5K2.0, concluded that a downward departure was appropriate, and merely failed to include a detailed identification of its reasons in the written statement.

In any event, we cannot resolve the uncertainty from the court's written statement, and we decline to proceed without a clearer understanding of the district court's reasons. Even under the deferential abuse-of-discretion standard required under subsection (3)(C), we must have enough information to determine what conclusions the district court reached, before we can decide whether the sentence imposed was within the proper exercise of the sentencer's discretion. We therefore vacate Bell's sentence and remand her case to the district court to clarify its reasoning.

## III.  Conclusion

For the foregoing reasons, Bell's sentence is VACATED and her case REMANDED for resentencing consistent with this opinion.

13