United States Court of Appeals
Fifth Circuit

**F I L E D**

June 16, 2004

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

**No. 03-40283**
_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**JACK MONTGOMERY PAINTER,**

**Defendant-Appellant.**

Appeal from the United States District Court
For the Southern District of Texas

Before JONES, EMILIO M. GARZA, and BENAVIDES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Jack Montgomery Painter pleaded guilty to one count of accessory after the fact for concealing from federal authorities the whereabouts of his fugitive son. See 18 U.S.C. §§ 3, 3146(a)(1), (b)(1)(A)(i). The district court sentenced Painter to three years probation and imposed a $52,200 fine. Painter appeals the fine, which far exceeds the maximum $5,000 fine under the sentencing guidelines. Because the district court departed on impermissible grounds from the sentencing guidelines range, we reverse and remand for resentencing.

## I.  BACKGROUND

Painter's son, Richard, was indicted for possessing with intent to distribute methamphetamine and cocaine. Richard was released after Painter secured a $20,000 bond. When Richard failed to appear for his rearraignment, he was indicted for violating 18 U.S.C. §§ 3146(a)(1), (b)(1)(A)(i). After an approximately nine-month investigation, the authorities arrested Richard in Costa Rica and extradited him to the United States. Six months later, Painter was indicted as an accessory after the fact to Richard's failure to appear violation, and he pled guilty.

The presentence report (PSR) indicated a total offense level of 7 and a criminal history category of I, yielding a punishment range of zero to six months imprisonment with a fine range of $500 to $5,000. In addition, the PSR reported that Painter "appears to have a net worth of approximately $2,837,713." The district court ultimately sentenced Painter to three years probation and ordered him to pay a fine of $52,200 within one week.

In written findings, the district judge explained that he departed from the guideline range because "a special factor exists in that the defendant has extraordinary assets, making a fine within the guideline range less than punitive." The court also noted that "[t]he defendant caused expenses to the United States greatly in excess of the guideline fine range . . . [I]ncarceration

was not appropriate for the circumstances of this offense, but punishment was needed."

In arriving at the final fine amount, the judge stated that the "fine should be based on the consequences to the United States" of Painter's behavior. The court found that the U.S. Attorney had spent approximately 58 hours investigating Richard's case (at $150 per hour). He then trebled this amount ($8,700) because "punitive damages are often treble damages." That total ($26,100) was then doubled to arrive at the final fine because, according to the district judge, the U.S. Marshal's Service had spent at least as much time on Richard's case as had the U.S. Attorney.

## II.  STANDARD OF REVIEW

The Prosecutorial Remedies and Other Tools Against the Exploitation of Children Today Act of 2003 (PROTECT Act), Pub. L. No. 108-21, § 401, 117 Stat. 650, 670 (Apr. 30, 2003), controls this court's standard of review. Before the passage of the PROTECT Act, codified at 18 U.S.C. § 3742, this court reviewed a district court's decision to depart from the guidelines for abuse of discretion. Koon v. United States, 518 U.S. 81, 98 (1996); United States v. Wilder, 15 F.3d 1292, 1300 (5th Cir. 1994). The PROTECT Act alters that standard of review, with respect to the departure decision, to de novo.[1]  See United States v. Bell, No. 03-20194,

---

[1]The PROTECT Act has been held in this circuit to apply retroactively. United States v. Bell, No. 03-20194, 2004 WL

3

2004 WL 1114580, at *3 (5th Cir. May 19, 2004); see also 18 U.S.C. § 3742(e)(3)(B) (2000 & Supp. 2003).

## III. DISCUSSION

The court articulated two specific factors to justify the departure from the guidelines: (1) Painter's "extraordinary assets" and (2) the loss to the government. As will be seen, these factors are specifically proscribed from consideration in sentencing.

In order to justify a departure, the court must determine whether

> there exists an aggravating or mitigating circumstance of a kind or to a degree not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission.

18 U.S.C. § 3553(b) (2000). Thus, this court must examine whether the factors relied upon by the district court were "adequately taken into consideration by the Sentencing Commission." But the PROTECT Act prohibits departures based on factors not authorized under § 3553(b). 18 U.S.C. § 3742(3)(B)(ii).

When determining the fine amount, the district judge must consider "the need for the combined sentence to reflect the seriousness of the offense (including the harm or loss to the

---

1114580, at *3 (5th Cir. May 19, 2004).

4

victim and gain to the defendant), to promote respect for the law, to provide just punishment and to afford adequate deterrence." U.S.S.G. § 5E1.2(d)(1) (2001);[2] see also 18 U.S.C. § 3553(a)(2)(A). More specifically, and subject to important caveats, the district court should consider "the defendant's income, earning capacity, and financial resources" and "any pecuniary loss inflicted upon others as a result of the offense." 18 U.S.C. §§ 3572(a)(1), (3) (2000). A defendant's "income" and financial resources, for instance, should only be considered when determining his ability to pay any fine at all. See 18 U.S.C. § 3572(a)(2); U.S.S.G. § 5E1.2(a). Moreover, the guidelines mandate that a defendant's socioeconomic status is not relevant in determining his sentence. U.S.S.G. § 5H1.10, p.s.

The PSR listed Painter's net worth only to illustrate his ability to pay the statutory fine. The district court, however, specifically relied on the defendant's "extraordinary assets" in concluding that the guideline fine range was "less than punitive." We cannot read this conclusion as other than an impermissible use of the defendant's socioeconomic status. See United States v.

_____

[2]Painter was sentenced in February 2003. However, even though the guidelines require use of the version in effect at the time of the defendant's sentence, the probation officer used the 2001 version of the sentencing guidelines when preparing the PSR. See U.S.S.G. § 1B1.11 (2001). Neither party has objected to the court's use of the 2001 guidelines manual and, therefore, this court refers to the 2001 version throughout this opinion. No differences significant to this case exist between the 2001 and 2002 manuals.

Graham, 946 F.2d 19, 21 (4th Cir. 1991) (holding that "affluence alone cannot justify an upward fine departure"). Because the district court relied on a factor that had already been considered and rejected by the Sentencing Commission, this aspect of the court's departure decision is erroneous. See 18 U.S.C. § 3553(b).

The district court also relied on the loss to the Government to justify its upward departure on the fine. While Painter's offense carries a maximum statutory fine of $125,000, 18 U.S.C. §§ 3571, 3 (2000), the guidelines prescribe a fine range of $500 to $5,000, pursuant to section 5E1.2(c)(3). As has been noted, the district court calculated the $52,200 fine based entirely on the estimated loss to the Government. The guidelines do allow the district court to consider "property damage or loss not taken into account within the guidelines" when deciding whether to depart. U.S.S.G. § 5K2.5, p.s. "Loss" in the sentencing guidelines generally refers to "pecuniary loss to a person other than the defendant." 18 U.S.C. § 3571(d) (2000) (cited by U.S.S.G. § 5E1.2 cmt. n.2). Further, the comments to the pertinent guide-line provision contemplate the possibility of upward departures where twice the amount of gain to the defendant or the amount of loss caused by the offense exceeds the maximum of the fine guideline. U.S.S.G. § 5E1.2 cmt. n.4.

The "loss" to the Government is contended to fall within these standards authorizing an upward departure, but this position is untenable. The comments to section 2B1.1 specifically exclude

6

from loss the "costs to the government of, and costs incurred by victims primarily to aid the government in, <u>the prosecution and criminal investigation of an offense</u>."  U.S.S.G. § 2B1.1 cmt. n.2(D)(ii) (emphasis added).[3]  The sentencing guidelines contemplated and rejected this factor as a basis for calculating loss; it may not also be the basis for an upward departure.

In sum, the district court relied on impermissible factors when deciding whether to depart from the applicable guideline fine range.  <u>See</u> 18 U.S.C. § 3742(f)(2).  We must accordingly reverse the district court's imposition of the $52,200 fine and remand for resentencing within the applicable guideline fine range.  <u>See</u> 18 U.S.C. § 3742(g); <u>see</u> <u>also</u> <u>United States v. Martin</u>, 363 F.3d 25, 40 (1st Cir. 2004).

**REVERSED** and **REMANDED**.

---

[3]This court derives its definition of "loss" from the comments to section 2B1.1.  These comments offer the most apt exposition of "loss" relevant to this determination. Furthermore, the guidelines explicitly reference these comments as instructive as to the parameters of loss.  <u>See</u> <u>e.g.</u>, U.S.S.G. § 8A1.2 cmt. n.3(i).