United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 18, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 03-10171

UNITED STATES OF AMERICA

Plaintiff - Appellee,

versus

MARK ELLIOTT SMITH

Defendant - Appellant.

Appeal from the United States District Court
for the Northern District of Texas

Before HIGGINBOTHAM, SMITH, and BENAVIDES, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

I

Mark Elliott Smith was charged in a two-count indictment with mail fraud, in violation of 18 U.S.C. § 1341 (Count One), and interstate transportation of a stolen car, in violation of 18 U.S.C. § 2312 (Count Two).  In November 1999, Smith met Deanna Miller in an internet chat room, convinced her that he loved her, and sent her three $10,000 checks drawn on an invalid account. Miller deposited one of the checks and, a week later, Smith, who had come to Iowa from Texas to visit her, took her shopping for a car.  Miller made a $5,000 down payment on a $25,000 BMW and financed the remaining balance.  Smith persuaded her to let him drive the new BMW back to Texas with the false representation that

he would return.  Miller later realized that the checks Smith had given her were worthless, and she reported the BMW stolen.

Earlier, in June 1999, Smith met Margie Jane Hill of Caldwell, Idaho, in an internet chat room and began a relationship with her that she believed was romantic.  In October 1999, Smith sent a fraudulent $10,000 check to Hill via U.S. mail and Hill deposited it.  Smith then told her that he had underestimated his bills and asked her to wire him $700 in cash.  Although she was unable to do so until the $10,000 check cleared, Hill, believing the money to be in her account, spent more than $7,000 on food and clothing for herself and her children and grandchildren.

Smith pleaded guilty to Count One of the indictment, pursuant to a written plea agreement.  After initially accepting it, the district court later rejected the agreement after the presentence report (PSR) was prepared.  The PSR explained that Smith routinely met women on internet chatrooms with the intent to defraud them. Smith described himself as a "con man" and admitted that he has been "conning" women for over 11 years, averaging one woman every three months but occasionally juggling as many as five women at a time.  The PSR detailed Smith's extensive criminal history, involving 20 years' worth of convictions and probation revocations arising out of persistent theft, forgery, and fraud.

After reviewing the PSR, the district court contacted counsel to inform them that it was inclined to reject the plea, stating:

This defendant is a one-man crime wave.

> Apparently he has absolutely no remorse for his criminal conduct. . . . I don't think anything is going to work with this defendant other than an extremely long [] term of imprisonment.
>
> An upward departure in this case, if the statutory sentencing permissible [sic] would allow it to 10 or 15 years, would be entirely appropriate under the facts of this case. And, of course, that wouldn't be permitted if I were to accept the plea agreement and sentence on the basis of the offense of conviction, which has a five-year maximum.

The district court noted that a plea of guilty to Count Two, interstate transportation of a stolen vehicle, would entail a higher statutory maximum, and it expressed concern that the Government intended to dismiss that count. The Government responded that it did not oppose rejection of the plea and that it had only agreed to dismiss Count Two in an effort to "move the case."

The district court thereafter rejected the plea agreement, explaining that "[i]n my view, a sentence that could be imposed pursuant to your plea agreement would not meet the objectives of sentencing." Smith then withdrew his plea. He subsequently pleaded guilty to Count Two, pursuant to a written plea agreement. An amended PSR was prepared, which determined Smith's offense level to be 13 and his criminal history points to be 29--putting him well into Criminal History Category (CHC) VI, the highest category-- subjecting him to a guidelines range of 33 to 41 months'

3

imprisonment.[1]  In addition to Smith's extensive criminal history, the PSR noted that Smith was under investigation in Texas for having passed $125,000 in worthless checks in March 2000.  Charges were also pending against Smith in Dallas for theft of more than $20,000, arising out of his purchase of a 2000 Ford Expedition with a fraudulent $20,000 check in November 2001, as well as in Tarrant County for passing $2,346.06 in "hot checks" in April 2001.  Smith received no criminal history points for any of these charges.

The PSR indicated that an upward departure would be warranted, pursuant to U.S.S.G. § 4A1.3, because Smith is a habitual criminal who has not been deterred by probation or brief prison terms and because his criminal history category did not adequately reflect the seriousness of his criminal past or the likelihood that he will commit future crimes.  Because his 29 total criminal history points reflected large-scale fraud cases similar in nature to the instant offense, the PSR concluded that Smith's criminal record "is egregious and places him outside the 'heartland' of cases normally seen by the Court."

---

[1] *See* U.S.S.G. Ch.5, Pt.A (Nov. 1998) (sentencing table).  Although the November 2002 guidelines were in effect at the time of sentencing, the probation officer had used the November 1998 version of the sentencing guidelines when preparing the PSR, having determined that the latter was in effect on the date the offense was committed.  *See* U.S.S.G. § 1B1.11(b)(1) (allowing use of guidelines in effect at time offense was committed to avoid violation of *ex post facto* clause); *but see* 18 U.S.C. § 3553(a)(4)(A) (directing use of guidelines in effect on the date defendant is sentenced).  Neither party has objected to use of the 1998 version-- which in any case does not differ in relevant part from the 2002 version--and we refer to the former throughout.  *See Untied States v. Painter*, 375 F.3d 336, 338 n.2 (5th Cir. 2004).

4

Smith objected to the PSR, asserting that an upward departure was not warranted because his CHC of VI fully took into account his criminal past. He renewed his objection at sentencing and presented the testimony of both his ex-wife and his common-law wife to the effect that his problems arose out of his difficult childhood and that he was a good man who was needed and loved by his family. Smith further asserted that, despite his criminal past, an upward departure was not warranted because he had no history of violence or drug use.

In February 2003, the district court overruled Smith's objection, determining that his criminal history score did not adequately reflect the seriousness of his past conduct or the likelihood that he would commit other crimes. The district court stated that it had considered the different sentencing levels that could be imposed and concluded that a sentence at the topmost level was appropriate and would achieve the sentencing objectives of punishment, deterrence, and incapacitation of the offender for the protection of the public. It therefore sentenced Smith to the statutory maximum of 120 months, followed by a three-year supervised-release term, and ordered him to pay $35,200 in restitution. The district court imposed Smith's sentence to run consecutively to any state or federal sentence he might receive. Smith timely appealed.

II

A

5

We first address whether the district court erred in rejecting the initial plea agreement to Count One of the indictment. We conclude that it did not.

A district court's rejection of a plea agreement is reviewed for an abuse of discretion.[2] A district court "abuses its discretion if it bases its decision on an error of law or a clearly erroneous assessment of the evidence."[3]

Rule 11 of the Federal Rules of Criminal Procedure provides that the district court may accept or reject a plea agreement.[4] Rule 11 does not limit a district court's discretion in rejecting

---

[2] *See United States v. Crowell*, 60 F.3d 199, 205 (5th Cir. 1995); *United States v. Foy*, 28 F.3d 464, 472 (5th Cir. 1994); *see also Santobello v. New York*, 404 U.S. 257, 262 (1971) (determining that a defendant has no absolute right to have a guilty plea accepted and that "[a] court may reject a plea in exercise of sound judicial discretion").

[3] *United States v. Mann*, 161 F.3d 840, 860 (5th Cir. 1998).

[4] *See* FED. R. CRIM. P. 11(e)(3)-(4). The Federal Rules of Criminal Procedure were amended effective December 1, 2002. Because Smith's plea was rejected and withdrawn in October 2002, citations to Rule 11 are to the version then in effect. At that time, Rule 11(e)(3)-(4) provided, in relevant part:

> (3) Acceptance of a Plea Agreement. If the court accepts the plea agreement, the court shall inform the defendant that it will embody in the judgment and sentence the disposition provided for in the plea agreement.
>
> (4) Rejection of a Plea Agreement. If the court rejects the plea agreement, the court shall, on the record, inform the parties of this fact, advise the defendant personally in open court or, on a showing of good case, in camera, that the court is not bound by the plea agreement, afford the defendant the opportunity to then withdraw the plea, and advise the defendant that if the defendant persists in a guilty plea or plea of nolo contendere the disposition of the case may be less favorably to the defendant than that contemplated by the plea agreement.

FED. R. CRIM. P. 11(e).

6

a plea agreement.[5]  A district court may properly reject a plea agreement based on the court's belief that the defendant would receive too light of a sentence.[6]  Under the guidelines, a court is counseled to reject the plea agreement if it determines that accepting the plea agreement will undermine the statutory purposes of sentencing or the sentencing guidelines.[7]  Moreover, a court is well-advised to reject a plea agreement that dismisses a charge if it finds that the remaining charges do not adequately reflect the seriousness of a defendant's actual offense behavior.[8]

The district court did not abuse its discretion in rejecting the initial plea agreement after reviewing the PSR.  The PSR indicated that Smith had an extensive history of theft, fraud, and forgery convictions, with outstanding and/or uncharged criminal conduct involving eight more women and $147,000.  The district court did not abuse its discretion in concluding that the plea agreement did not adequately reflect the seriousness of the offense, was unduly lenient, and would not meet the objectives of sentencing given Smith's extensive criminal history, persistent

---

[5] FED. R. CRIM. P. 11(e)(4).  The district court in the present case took the steps necessary to comply with this rule.

[6] See Crowell, 60 F.3d at 205-06; Foy, 28 F.3d at 472; United States v. Bean, 564 F.2d 700, 704 (5th Cir. 1977).

[7] See U.S.S.G. § 6B1.2(a), p.s.

[8] See id.; United States v. Mizell, 88 F.3d 288, 291 (5th Cir. 1996); Crowell, 60 F.3d at 206; Foy, 28 F.3d at 473.

criminal conduct, and large number of victims.[9]

B

Smith's argument that the district court improperly engaged in plea negotiations is equally unavailing.  Because Smith raised this argument for the first time on appeal, we review it only for plain error.[10]  In order to establish plain error, Smith must show: (1) error, (2) that is clear or obvious, and (3) that affects substantial rights.[11]  "'If all three conditions are met an appellate court may then exercise its discretion to notice a forfeited error but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.'"[12]

A district court is absolutely prohibited from participating in plea negotiations.[13]  In *United States v. Miles*, we held that "Rule 11 requires that a district court explore a plea agreement

---

[9] *See Crowell*, 60 F.3d at 205-06 (concluding district court did not abuse its discretion in rejecting plea agreement as unduly lenient given large number of victims and protracted course of fraudulent activity); *see also* U.S.S.G § 6B1.2(a), p.s.

[10] *See United States v. Calverley*, 37 F.3d 160, 162-64 (5th Cir. 1994) (en banc); *see also United States v. Infante*, 404 F.3d 376, 394 (5th Cir. 2005); *United States v. Mares*, 402 F.3d 511, 520 (5th Cir. 2005), *petition for cert. filed*, (U.S. Mar. 31, 2005) (No. 04-9517).

[11] *Infante*, 404 F.3d at 394; *Mares*, 402 F.3d at 520; *United States v. Vasquez*, 216 F.3d 456, 459 (5th Cir. 2000) (citing *United States v. Olano*, 507 U.S. 725, 732-35 (1993)).

[12] *Mares*, 402 F.3d at 520 (quoting *United States v. Cotton*, 535 U.S. 625, 631 (2002)).

[13] FED. R. CRIM. P. 11(e)(1) ("The court shall not participate in any discussions between the parties concerning any such plea agreement."); *United States v. Miles*, 10 F.3d 1135, 1139 (5th Cir. 1994).

once disclosed in open court; however, it does not license discussion of a hypothetical agreement that it may prefer."[14] Similarly, in *United States v. Crowell*, we explained that

> although the district court may state its reasons for rejecting a plea agreement, it may not also suggest the plea agreements that would be acceptable. When a court goes beyond providing reasons for rejecting the agreement presented and comments on the hypothetical agreements it would or would not accept, it crosses over the line established by Rule 11 and becomes involved in the negotiations.[15]

The fact that the parties rely on the district court's comments in fashioning a subsequent plea agreement is not determinative of whether the district court engaged in plea negotiations.[16] Rather, when evaluating a district court's comments concerning a plea agreement, "[t]he proper inquiry is whether the district court was actively evaluating a plea agreement, as the court is required to do, or whether the court is suggesting an appropriate accommodation for a subsequent plea agreement, something this court found prohibited in *Miles*."[17]

The district court did not engage in plea negotiations when it rejected Smith's initial plea. Instead, as explained above, it properly stated its reasons for rejecting the plea agreement. Smith's argument that the district court effectively engaged in

---

[14] *Miles*, 10 F.3d at 1140.

[15] *Crowell*, 60 F.3d at 203.

[16] *Id.* at 204.

[17] *Id.*

plea negotiations by stating that it felt constrained by the statutory maximum of the proposed initial plea is without merit. The district court merely expressed its concerns with the initial plea agreement. It did not dictate the outcome of any subsequent plea negotiations, nor did it specifically state that it would only accept a plea to Count Two. Because the district court neither interfered with ongoing plea negotiations, as in *Crowell*, nor specified what plea agreement would be acceptable, as in *Miles*, it did not run afoul of Rule 11(e)(1).[18] Consequently, Smith has not demonstrated any error, plain or otherwise, under Rule 11(e)(1).

C

In a supplemental brief filed subsequent to *Blakely v. Washington*,[19] Smith argues that his Sixth Amendment rights were violated by the district court's upward departure based upon conduct to which Smith did not plead guilty and for which Smith was not convicted. *United States v. Booker*,[20] decided while the present case was pending on direct appeal, applies.[21] Because this issue was raised for the first time on appeal, our review is again for

---

[18] *See United States v. Jeter*, 315 F.3d 445, 449 (5th Cir. 2002).

[19] 542 U.S. 296 (2004).

[20] 125 S.Ct. 738 (2005) (holding mandatory application of federal sentencing guidelines runs afoul of Sixth Amendment and excising both 18 U.S.C. § 3553(b)(1), which made guidelines mandatory, and 18 U.S.C. § 3742(e), which governed standards of review and referred to § 3553(b)(1)).

[21] *Id.* at 769 ("[W]e must apply today's holdings--both the Sixth Amendment holding and our remedial interpretation of the Sentencing Act--to all cases on direct review." (citing *Griffith v. Kentucky*, 479 U.S. 314 (1987))).

plain error.[22]

Smith has not demonstrated that his substantial rights were affected; there is no indication in the record that the district court would have imposed a lower sentence if the guidelines had been advisory at the time.[23]  Indeed, it is plain that the district court judge would *not* have given a lesser sentence, given the stern statements and discretionary upward departure to the statutory maximum.  Smith's *Booker* challenge fails.

D

Finally, we turn to Smith's argument that the district court erred in upwardly departing from the guidelines to the statutory maximum.  This argument also fails to persuade.

Prior to 2003, our review of departure decisions was for abuse

---

[22] *Infante*, 404 F.3d at 394; *Mares*, 402 F.3d at 520.

[23] *See Infante*, 404 F.3d at 394-95; *Mares*, 402 F.3d at 522; *see also United States v. Creech*, 408 F.3d 264, 272 (5th Cir. 2005); *cf. United States v. Pennell*, 409 F.3d 240, 245-46 (5th Cir. 2005).

of discretion,[24] pursuant to § 3742(e).[25]  In April 2003, Congress amended § 3742(e), altering our standard of review with respect to the departure decision to *de novo*.[26]  Under this scheme, while the *decision* to depart was reviewed *de novo*, the *degree* of departure was still reviewed for abuse of discretion.[27]  Then, in January 2005, the Supreme Court in *Booker* excised § 3742(e),[28] leaving the

---

[24] *See Koon v. United States*, 518 U.S. 81, 91 (1996) ("The appellate court should not review the departure *de novo*, but instead should ask whether the sentencing court abused its discretion."); *id.* at 100 (noting that just because "a departure decision, in an occasional case, may call for a legal determination does not mean, as a consequence, that parts of the review must be labeled *de novo* while other parts are labeled an abuse of discretion" and pointing out that this unitary abuse-of-discretion standard "includes review to determine that the discretion was not guided by erroneous legal conclusions"); *United States v. Hefferon*, 314 F.3d 211, 227 (5th Cir. 2002) ("We review the district court's decision to depart upward for abuse of discretion and shall affirm an upward departure if (1) the district court gives acceptable reasons for departing, and (2) the extent of the departure is reasonable."); *United States v. Harris*, 293 F.3d 863, 871 (5th Cir. 2002) ("We review a district court's departure from the range established by the Guidelines for abuse of discretion . . . ."); *see also United States v. Ashburn*, 38 F.3d 803, 807 (5th Cir. 1994) (en banc).

[25] 18 U.S.C. § 3742(e) (1994) read in relevant part:

> Consideration.--Upon review of the record, the court of appeals shall determine whether the sentence . . . (3) is outside the applicable guideline range, and is unreasonable, having regard for--
>
> > (A) the factors to be considered in imposing a sentence, as set forth in chapter 227 of this title [§ 3551 *et seq.*]; and
> >
> > (B) the reasons for the imposition of the particular sentence, as stated by the district court pursuant to the provisions of section 3553(c) . . . .

[26] Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 (PROTECT Act), Pub. L. No. 108-21, § 401(d), 117 Stat. 650, 670 (Apr. 30, 2003); *see Painter*, 375 F.3d at 338; *United States v. Bell*, 371 F.3d 239, 242-43 (5th Cir. 2004); *United States v. Lee*, 358 F.3d 315, 326 (5th Cir. 2004).

[27] *Bell*, 371 F.3d at 242-43.

[28] 125 S. Ct. at 764.

appellate courts to review sentences for "reasonableness."[29]  The
Court explained that it was essentially returning to the standard
of review provided by the pre-2003 text, which directs us "to
determine whether the sentence 'is unreasonable' with regard to
§ 3553(a)."[30]  Section 3553(a)[31] remains in effect, and its factors

---

[29] *Id.* at 765-66; *Mares*, 402 F.3d at 518.

[30] *Booker*, 125 S. Ct. at 765.

[31] 18 U.S.C. § 3553(a) reads:

> (a) Factors to be considered in imposing a sentence.--The court
> shall impose a sentence sufficient, but not greater than necessary,
> to comply with the purposes set forth in paragraph (2) of this
> subsection. The court, in determining the particular sentence to be
> imposed, shall consider--
>
>> (1) the nature and circumstances of the offense and the
>> history and characteristics of the defendant;
>>
>> (2) the need for the sentence imposed--
>>
>>> (A) to reflect the seriousness of the
>>> offense, to promote respect for the law,
>>> and to provide just punishment for the
>>> offense;
>>>
>>> (B) to afford adequate deterrence to
>>> criminal conduct;
>>>
>>> (C) to protect the public from further
>>> crimes of the defendant; and
>>>
>>> (D) to provide the defendant with needed
>>> educational or vocational training, medical
>>> care, or other correctional treatment in
>>> the most effective manner;
>>
>> (3) the kinds of sentences available;
>>
>> (4) the kinds of sentence and the sentencing range
>> established for . . . the applicable category of offense
>> committed by the applicable category of defendant as set
>> forth in the guidelines . . .;
>>
>> (5) any pertinent [sentencing guidelines] policy
>> statement . . .[;]
>>
>> (6) the need to avoid unwarranted sentence disparities
>> among defendants with similar records who have been

13

guide us in determining whether a sentence is unreasonable.[32]

We explained, in *United States v. Mares*, that where the sentencing judge, in the exercise of discretion, imposes a sentence "within a properly calculated Guideline range, in our reasonableness review we will infer that the judge has considered all the factors for a fair sentence set forth in the Guidelines" and that "it will be rare for a reviewing court to say such a sentence is 'unreasonable.'"[33]  In *Mares*, we included in such "Guidelines sentences" a "sentence that has been adjusted by applying a 'departure' as allowed by the Guidelines."[34]  If the district court decides to impose a "non-Guideline sentence," a more thorough explanation is required.[35]

The district court first determined the applicable guidelines range to be 33-41 months, and there is no challenge before us to this determination.  At the sentencing hearing, the court then explained its reasons for departing from the guidelines range to a sentence of 120 months, the statutory maximum, as follows:

> Section 4A1.3 of the guidelines provides
> that if reliable information indicates that

---

found guilty of similar conduct; and

(7) the need to provide restitution to any victims of
the offense.

[32] *Booker*, 125 S. Ct. at 766; *see also Mares*, 402 F.3d at 519.

[33] 402 F.3d at 519.

[34] *Mares*, 402 F.3d at 519 n.7; *see also United States v. Angeles-Mendoza*, 407 F.3d 742, 754 & n.26 (5th Cir. 2005).

[35] *Mares*, 402 F.3d at 519.

14

the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the Court may consider imposing a sentence departing from the otherwise applicable guideline range.

Based on that provision, I think there should be a departure in this case and a significant departure. Reliable information the Court has clearly indicates that the criminal history category in this case does not adequately reflect the seriousness of this defendant's past criminal conduct or the likelihood that he will commit other crimes.

I've considered the different levels of sentencing that can be imposed and I've concluded that a sentence at the top of the statutory sentence would be the appropriate sentence in this case, taking into account all the objectives of sentencing.

Therefore I'm ordering, adjudging, and decreeing that the defendant be committed to the custody of the Bureau of Prisons to serve a term of imprisonment of 120 months. As I've indicated, that sentence is a departure from the guideline range pursuant to U.S.S.G. Section 4A1.3. The defendant is a habitual criminal who has not been deterred by probation or parole, supervision, brief jail terms, or prison sentences. He has established a pattern of criminal livelihood. There is reliable information that the Criminal History Category VI classification does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that he will commit other crimes.

. . .

He has a total of 29 criminal history points which reflect large-scale fraud cases, similar in nature to the instant offense. The defendant's criminal record is egregious and places him outside the heartland of cases normally seen by the Court. And I have moved

15

> incrementally down the Criminal History Category VI and determined that a sentence of 120 months, the statutory maximum sentence that can be imposed, will achieve the Court's sentencing objectives of punishment, deterrence, and incapacitation of the offender for the protection of the public.

The district court duly followed the direction given by the policy statement in U.S.S.G. § 4A1.3 for upward departures from a CHC of VI.[36] Smith acknowledges that a sentencing judge may upwardly depart from the guidelines range "when the criminal history category significantly under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit further crimes"[37]--precisely the basis of the district court's sentence here. The district court's explanation is adequate.[38] We are persuaded, guided by the factors in §

---

[36] *See* U.S.S.G. § 4A1.3, p.s.; *see also Ashburn*, 38 F.3d at 809; *United States v. Lambert*, 984 F.2d 658 (5th Cir. 1993) (en banc).

[37] U.S.S.G. § 4A1.3, p.s.

[38] There is no challenge before us to the adequacy of the district court's *written* explanation as such, and we confine our inquiry to the explanation given at the sentencing hearing. In the written judgment, the explanation for departure consisted of a single line: "The sentence was an upward departure for the reasons stated from the bench at the sentencing hearing." *United States v. Smith*, No. 4:02-CR-081-A(01), at *5 (N.D. Tex. Feb. 12, 2003) (judgment) (McBryde, J.).
    A district court is required to explain the reasons for its sentence in open court, and, per the PROTECT Act, which took effect after the judgment in the present case, a district court must also provide its reasons in its written order of judgment when the sentence is outside the relevant guidelines range. *See* 18 U.S.C. § 3553(c); PROTECT Act, Pub. L. No. 108-21, § 401(c), 117 Stat. 650, 669-70 (adding writing component to § 3553(c)); *see also Painter*, 375 F.3d at 338 n.1 (PROTECT Act applies retroactively to cases on direct review) (citing *Bell*, 371 F.3d at 241-42). This requirement survives *Booker*. *See Mares*, 402 F.3d at 519 n.8.
    We note that in *United States v. Lee*, we affirmed an upward-departure sentence by the same judge as in the present case, pursuant to a written judgment issued within days of the present case, and containing an identical explanation for the departure. *See* No. 4:01-CR-015-A(01), at *4 (N.D. Tex. Feb. 3, 2003) (judgment) (McBryde, J.) ("The sentence was an upward departure for the reasons

16

3553(a), that the sentence imposed was reasonable for the reasons given by the district court.[39]

Smith points to the fact that his sentence was increased from a guidelines maximum of 41 months up to 120 months--an increase of nearly 300% and a magnitude of some 79 months--as evidence that the sentence is "severe." This tact is unavailing, as we have previously upheld comparable increases, in terms of both percentage and magnitude.[40] That Smith has no history of "drug or alcohol use or abuse and no incidents of violence"--another argument pressed by Smith--likewise does not indicate here that the sentence was unreasonable, especially in light of the reasons given by the district court.[41] We further note that Smith's 29 criminal history points are more than double the 13 points that were required for a

---

stated from the bench at the sentencing hearing."), *aff'd*, 358 F.3d 315, 326 (5th Cir. 2004); *see also Bell*, 371 F.3d at 243 n.12; *cf. United States v. Andrews*, 390 F.3d 840, 850 (5th Cir. 2004).

[39] *See* 18 U.S.C. § 3553(a).

[40] *See United States v. Daughenbaugh*, 49 F.3d 171, 174-75 (5th Cir. 1995) (affirming departure from guidelines maximum of 71 months to sentence of 240 months, an increase of 338%, or 169 months); *United States v. Rosogie*, 21 F.3d 632, 633-34 (5th Cir. 1994) (departure from guidelines maximum of 37 months to sentence of 150 months, an increase of over 400%, or 113 months, is reasonable).

[41] *See Rosogie*, 21 F.3d at 634 (affirming, with no indication that Appellant had a violent criminal history, significant upward departure as reasonable given that "Appellant's deceptive, fraudulent offenses and criminal history were of the kind and to the degree that were not adequately taken into consideration by the sentencing guidelines," that Appellant's criminal history points were almost double those necessary for CHC VI, and that "Appellant presented a high risk of recidivism and nothing short of incarceration . . . stopped him from committing additional crimes").

CHC of VI.[42]  As we have previously explained, although a CHC of VI "is the highest criminal history category, the sentencing guidelines nonetheless contemplate that 'there may, on occasion, be a case of an egregious, serious criminal record in which the guideline range for Criminal History Category VI is not adequate to reflect the seriousness of the defendant's criminal history.'"[43] In short, we are persuaded that the sentence was reasonable.

## III

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[42] *See Rosogie*, 21 F.3d at 634 (affirming upward departure as reasonable and noting that "Appellant's criminal history points were almost double those necessary for category VI"); *see also Lee*, 358 F.3d at 328 (affirming upward departure, noting that defendant's 21 criminal history points were eight more than that required for CHC VI); *Daughenbaugh*, 49 F.3d at 175 (affirming upward departure, noting Appellant's criminal history score was nearly twice that required for CHC VI).

[43] *Lee*, 358 F.3d at 328 (quoting U.S.S.G. § 4A1.3, p.s.).